(Decided 14th November, 1890.)

George A. Blake *vs.* William G. H. Stump and Alexander H. Stump, trading as Stump & Brother.

*Judicial discretion—Real estate Brokers—Commissioners— Examination of Witness—Custom and Usage—Evidence— Instruction.*

It is in the discretion of the Court to allow, on the re-direct examination of a witness, the introduction of something forgotten or omitted in the examination in chief, if the purposes of justice seem to demand it.

In an action by real estate brokers to recover commissions for selling a house in the City of Baltimore, the Court instructed, at the request of the plaintiffs, that they were entitled to recover, if the jury should find that, according to the custom of brokers in the City of Baltimore, the service undertaken by a broker, was simply to introduce to the seller a party, who afterwards, within a reasonable time, actually purchased the property at a price acceptable to the seller    Held :

That while the instruction omitted an essential element to entitle the plaintiffs to compensation, that such introduction must have been the procuring cause of the sale, it was not misleading, as the word "simply" was sufficiently qualified and explained by other instructions which required the jury to find that the introduction was the procuring cause of the sale.

Blake *vs.* Stump.

A witness was asked by the plaintiffs' counsel the following question : "If a broker is employed by the vendor of real estate to find a purchaser for his property, and he does introduce to the vendor, as a probable purchaser, a man who buys within a reasonable time, the broker is entitled to his commissions; the only qualification to this rule being the rule that, where two or more brokers are employed to negotiate the same transaction, the broker who firsts succeeds is entitled to full commissions, and the others are not entitled to any." HELD :

That such a mode of examination was not permissible. It was not a question at all, but a bare statement of the law as established by usage in the estimation of the counsel.

The fact that the defendant "was a builder largely engaged in buying and selling real estate, and at times through the agency of real estate brokers," was not sufficient to impute to him knowledge of a usage mentioned in the instruction. It should have been put to the jury to find on the proofs, if they could, whether he did have knowledge of the usage, and dealt with plaintiffs with such knowledge.

The plaintiffs testified to having been requested by the purchaser to see at what price he could buy defendant's house, and that, in pursuance of the request, they approached the defendant and asked him if they could sell his house for him, and were told that they might, and the price was stated. Instead of seeking to get the price specified, they told the purchaser that they thought a less sum would buy the house, and this offer was made in writing to the defendant. After the purchase at a sum less than that originally asked, the purchaser offered the plaintiffs compensation, which they refused. HELD :

That this evidence was sufficient to authorize an instruction that the plaintiffs were not entitled to recover, if the jury believed that the purchaser himself employed the plaintiffs to procure the property, and that they, in pursuance of this employment, commenced to treat with the defendant for the purchase of the property; or that the plaintiffs, while in the employ of the defendant, were, in respect to the purchase and sale, in any way in the employ, or acting as agent, of the purchaser, beyond the power or authority to bind them to a sale by a memorandum; or that the plaintiffs were acting in the interest of the purchaser; and that the instruction was not misleading as presenting three distinct propositions disjunctively.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*First* and *Second Exceptions* stated in the opinion of the Court.

*Third Exception.*—The plaintiffs offered the two prayers following:

1. That if the jury shall find from the evidence that the plaintiffs were employed by the defendant as real estate brokers to sell for said defendant his house on the northwest corner of Charles and Biddle streets, in Baltimore City, and if they shall find that according to the custom of brokers in said Baltimore City, the service undertaken by a broker so employed is simply to introduce to the seller a party who afterwards, within a reasonable time, actually purchases the property at a price acceptable to said seller; and if they shall find that the defendant, at the time of said employment, (if they shall so find,) and for years previously, was a builder largely engaged in buying and selling real estate, and at times through the agency of real estate brokers; and if they shall further find that the plaintiffs, after their said employment, (if the jury shall find the same,) did bring together the said defendant and Mrs. Julia C. Fowler, who afterwards, within a reasonable time, actually purchased the said property from the defendant, then the plaintiffs are entitled to recover such commissions as the said jury shall find usual and customary, with interest in their discretion from the date of the consummation of the said sale, and it is immaterial whether or not the services of the plaintiffs so rendered were actually beneficial to the said defendant, and it is immaterial at what price the property was actually sold, except in calculating the amount of commissions.

2. If the jury find from the evidence that the defendant employed the plaintiffs to procure a purchaser for

the property spoken of by the witnesses, and that the plaintiffs did procure a purchaser for said property, and the said property was sold by the defendant to a purchaser procured by the plaintiffs, then the plaintiffs are entitled to recover such commissions as they may find usual and customary, with interest in their discretion from the date of the consummation of said sale.

The defendant offered eight prayers as follows:

1. That the verdict must be for the defendant in this cause, unless the jury believe that there was a contract, either express or implied, for the employment of the plaintiffs by the defendant to procure for him a purchaser for the property on the corner of Charles and Biddle streets, described in the evidence, and that the plaintiffs did procure such purchaser for said property, in accordance with the terms of such employment.

2. Although the jury may find that the plaintiffs first suggested to the defendant the name of Mrs. Fowler, and brought to said Fowler's attention the house and lot in rear, described in the evidence, nevertheless, if the negotiations between the defendant and plaintiffs were unsuccessful, and were broken off and abandoned by the plaintiffs, and the defendant himself after such abandonment of the negotiations, commenced and carried to completion with the Fowlers negotiations for sale for part of the property upon other and better terms than the plaintiffs could obtain from Fowler, then the plaintiffs are not entitled to recover, and their verdict must be for the defendant.

3. Even although the jury may find that the plaintiffs were employed to make sale of the property mentioned in the evidence, nevertheless, if they shall find that the plaintiffs failed to procure an offer for said property, which the defendant was willing to accept, and the plaintiffs wrote to the defendant the letter of January 28th, and that the defendant received the same, and did

not re-employ the plaintiffs "before 3 o'clock on the 30th inst.," in said letter named, their verdict must be for defendant, notwithstanding the fact that the property was afterwards sold direct to the party on whose behalf plaintiffs were negotiating.

4. If the jury believe from the evidence that Mrs. Julia C. Fowler called upon the defendant at his office and discussed the property described in the evidence, some months prior to the first interview between the plaintiffs and the defendant, and that the suggestions which subsequently ended in the purchase of said property by the said Julia C. Fowler, were conducted directly between the said Julia C. Fowler and the defendant, and not through the plaintiffs, then their verdict must be for the defendant.

5. If the jury find from the evidence that the defendant agreed to pay the plaintiffs commissions on a sale of the property corner of Charles and Biddle streets, in case they find for the plaintiffs, then their verdict must be only for commissions on the sum of $15,000, for which amount the leasehold interest in said property was sold.

6. Unless the jury shall believe that the plaintiffs were the procuring cause of the sale of the defendant's house to Mrs. Fowler, their verdict must be for the defendant.

7. That although the jury shall believe from the evidence that the plaintiffs were employed by the defendant to effect the sale in question, and introduced the party who eventually bought the property, yet the plaintiffs are not entitled to recover, if the jury also believe that the sale was effected in consequence of other influence, unmixed with and entirely different from what was furnished by the introduction of the said purchaser to the defendant by the plaintiffs.

8. That although the jury shall believe from the evidence that the plaintiffs were employed by the defend-

ant to effect the sale in question, if the jury shall also believe that prior to the commencement of negotiations, the purchaser introduced by the plaintiffs, and who bought the property, had himself employed the plaintiffs to procure the property described in the evidence, and that the plaintiffs in pursuance of this employment, commenced to treat with the defendant for the purchase of the property; or if the jury shall believe that at any time whilst the plaintiffs were in the employ of the defendant the said plaintiffs were in respect to this purchase and sale in any way in the employ or acting as agent of the said purchaser (beyond the power or authority to bind them to a sale by memorandum) or that the plaintiffs were acting in the interest of the said purchaser, then the plaintiffs are not entitled to recover.

The Court (HARLAN, J.) granted the prayers of the plaintiffs, and the first, fourth, sixth and seventh prayers of the defendant, and rejected his other prayers. The defendant excepted, and the verdict and judgment being for the plaintiffs, he appealed.

The cause was argued before ALVEY, C. J., MILLER, IRVING, BRYAN, FOWLER, and McSHERRY, J.

*George Blakistone,* for the appellant.

*Robert H. Smith,* and *Alfred S. Niles,* for the appellees.

IRVING, J., delivered the opinion of the Court.

This suit is an action of assumpsit, in which commissions for selling the house of the appellant are sought to be recovered by the appellees. There are three exceptions in the record, the first and second having respect to the testimony offered, and acted on by the Court, and the third being to prayers granted and refused. By the recitals in the first bill of exceptions, it appears, that

the plaintiffs are real estate brokers in Baltimore City, and that the appellant owned a house in the city which he sold to Mrs. Julia C. Fowler for $15,000, subject to a ground rent of $1020, redeemable at any time after one year at six per cent., which sale was made by the appellant in person to Mr. Fowler, who was acting for his wife. Mr. G. W. Stump, one of the appellees, testified that Mr. Fowler told him he wanted to purchase a house, and asked him who paid commissions. He told Fowler that the seller did, and thereupon Mr. Fowler said "if that is the case see what you can get Blake's house for." Stump says, "I called at Blake's office; told him I was a real estate man; asked him if I could sell his house; he said I could sell it, and his price was $40,000." After offering in evidence the letters to Blake containing the offers for the property, Mr. P. C. Dugan was produced as a witness, and testified that he was and had been for 23 years a real estate agent in the City of Baltimore, and was familiar with the customs and usages prevailing amongst real estate brokers in Baltimore City. The following question was then propounded: "If a broker is employed by the vendor of real estate to find a purchaser for his property, and he does introduce to the vendor as a probable purchaser, a man who buys within a reasonable time, the broker is entitled to his commissions; the only qualification to this rule being the rule that where two or more brokers are employed to negotiate the same transaction, the broker who first succeeds is entitled to full commissions, and the others are not entitled to any." To this question objection was interposed, which was overruled, and the witness answered, "that is correct sir, that is the rule." The objection which was to the form of the question as stating a matter of law having been overruled, the first exception was taken. The question as first put was leading, and on objection to it as stating

a proposition of law, it was recast as quoted, and was more obnoxious to objection than at first, and the objection was renewed.    As at last propounded it was no question at all.    It is a bare statement of the law as established by usage in the estimation of the questioning counsel, without any interrogation or mark of it, except the statement of counsel that he "wanted to propound this question."    Calling it a question he only states what he understands the usage to be, and the witness replies "that is correct sir, that is the rule."    It needs no argument to demonstrate that such a method of examination is not permissible.    As it was claimed that usage made the law of this case, the objection was properly stated that the question stated a proposition of law.    It was not the right way of eliciting from the witness whether any usage existed, and if so, what it was, and cannot be approved.

The second exception was to the refusal of the Court to allow a question put to witness Fowler on re-direct examination on the part of the appellant, "whether he was at any time during these transactions in a position to pay $32,000."    It was objected to on the ground that it was new matter, and not brought out on examination in chief, and of course not cross-examined about.    The rule is undoubtedly a good one that a party producing a witness must exhaust him on examination in chief, and must on re-examination be confined to the matter brought out on cross-examination as to what was proven in chief. It is, of course, in the discretion of the Court to allow the introduction of something forgotten or omitted in the examination in chief, if to the Court the purposes of justice seem to demand it.    There seems to have been no appeal to the Court for permission to ask it, and if there had been, and it had been granted or refused, there would have been no appeal from the exercise of the discretion.    Strictly, the question was at that time inadmissible, and the Court ruled rightly.

The plaintiffs' first prayer was specially excepted to on the part of the appellant. This fact does not appear in the bill of exception; but the objection is embodied in the record as having been duly filed; and by agreement filed in this Court, it is provided, that the Court may consider that objection as if embodied regularly in the exception. The special exception is to the effect that there is no evidence of a custom such as is set out in the prayer; and that there was no evidence that the appellee was employed to sell generally, the contention being that the evidence established that he was to sell at a fixed price, viz., $40,000. The special language of the prayer excepted to is this, "if they shall find that according to the custom of brokers in said Baltimore City, the service undertaken by a broker so employed is simply to introduce to the seller a party who afterwards, within a reasonable time, actually purchases the property at a price acceptable to the seller," &c. The use of the word "simply" in the connection indicated in this quotation from the prayer, it is claimed is misleading by omitting another essential element to entitle to compensation, viz., that such introduction must have been the *procuring cause* of the sale. It is the undoubted law, that the introduction must be the foundation of the negotiations and procuring cause of the sale. If it is such foundation and procuring cause, then the broker is entitled to commissions, notwithstanding the sale may have been finally effected by direct treaty of the parties without the broker's intervention. *Jones vs. Adler,* 34 *Md.,* 440; *Schwartze vs. Yearly,* 31 *Md.,* 270; *Keener vs. Harrod and Brooke,* 2 *Md.,* 71; *Attrill vs. Patterson,* 58 *Md.,* 251. Followed up as it was by the second prayer of the plaintiffs, and the first, sixth and seventh of the defendant, all of which told the jury they must find the introduction was the procuring cause of the sale, we cannot see how the jury could have been misled by the putting of

Blake *vs.* Stump.

the first prayer of the plaintiffs. The word "simply" was unnecessary, but qualified and explained as it was by those other instructions we have mentioned, we do not think that was sufficient entirely to condemn the instruction. It was objected specially that there was no evidence to sustain this prayer as to the usage set up, but that cannot be sustained, for several witnesses testified to it. It is true they did not use the word "simply" which is used in the prayer, but in such language as would justify the jury if they found a usage at all, to find one such as is mentioned in the prayer. It was also contended that there was no evidence of employment such as recited in the prayer, the appellant insisting that if there was any employment it was not general, but special to sell at a specified price. We do not think this objection well taken. The appellant denies in his testimony that he employed the plaintiffs at all; but one of the plaintiffs states what took place between him and the appellant in respect to the matter. It was for the jury to say whether the plaintiffs were employed and how employed. The statement of what took place as made by G. W. Stump is perhaps a little ambiguous, and under such circumstances it was right that the jury should say from the *colloquium* what the parties intended. As the jury might find that the price named was only a statement of what was desired for the property if it could be obtained, and not a statement that no less would be taken, and therefore not a restricted employment, it was entirely competent for the plaintiffs to put it to the jury to find according to their theory; and if the defendant desired the jury to pass on that question, he ought to have put his theory in the form of an instruction, which he did not do. The jury might find and properly so that there was a general employment; whereas it might be that they would think that the agent was restricted as to price. If the latter, then, of course, according to

the authorities the agent would not get commissions
unless he obtained the specified price, or that was waived.
*Jones vs. Adler,* 34 *Md.,* 440; *Mechem on Agency, secs.* 965
*and* 966, *and note.*    This prayer, *however,* is based on the
theory of a usage, which usage, to be available as against
the appellant, must be so notorious as to affect appel-
lant with knowledge of it, and raise the presumption
that he dealt with reference to it.    *Murray, et al. vs.
Spencer,* 24 *Md.,* 520; *Patterson vs. Crowther and Boone,*
70 *Md.,* 128.    If it was not thus notorious, actual know-
ledge must be proven to bind a party.    There seems to
have been no proof of general notoriety, and the only
ground set out in the prayer for the assumption it makes,
that he knew of it, is that the appellant "was a builder
largely engaged in buying and selling real estate, and at
times through the agency of real estate brokers."    Because
of this fact knowledge is imputed without calling on the
jury to find that he did have knowledge of the custom,
and dealt with plaintiffs with such knowledge.    "At
times" the prayer recites he had dealt with and through
real estate brokers.    "*At times*" is indefinite.    It may
have been many or few times.    *Non constat* that those
times he may not have had a special contract respecting
commissions.    One of the witnesses for the plaintiffs,
Mr. Rogers, said he *always bargains* about commissions.
We think this prayer ought not to have assumed know-
ledge of the custom from the recited facts, but ought to
have put that to the jury to find on the proofs if they
could.    No objection was taken to this prayer for such
assumption, and as a *granted* prayer a reversal would not
be ordered for that defect, but, as the case must go back
for other error, we thought it right to point out this
defect.

The rejection of the fifth prayer of the appellant was,
in our view, erroneous.    The rule of the Real Estate
Exchange, according to the tenth section of Article

seven of its Constitution, is proven to be that "commission shall be chargeable on the entire principal or value of the property," if any "part of the purchase money remains on mortgage or redeemable ground rent;" and some witnesses testified that it was the custom to calculate commissions on the basis of a fee value if mortgage rested on the property, or a lease was taken. It is very certain that the rules of the Brokers' Exchange cannot be allowed to control. *Taliaferro vs. First National Bank of Baltimore,* 71 *Md.,* 218. It is a question of public and notorious usage, and whether such usage was reasonable and proper. If there was evidence that the appellant contracted to pay according to that rule, he would be bound by that contract. But there is no pretence there was. an express contract on the subject. To bind the defendant to any such rule it must appear to have been of such public notoriety that he must be presumed to have knowledge of it, and therefore dealt expecting to be bound by it. A usage cannot be sustained which violates any well-known rule of law, *Raisin vs. Clark,* 41 *Md.,* 168; neither can it be sustained if it is unreasonable in its character. *Mechem on Agency, page* 182. In *Livezy vs. Miller,* 61 *Md.,* 338, commissions on the *actual money value* exclusive of the mortgage, were allowed by this Court, and no more. In respect to the rate of compensation for such service, it is said in *Mechem on Agency, section* 963, that in the absence of agreement, a prevailing usage will control; but in note 1 to same section, on page 792, "to establish such custom, it must be *reasonable, certain,* uniform, continued, and, moreover, generally understood and acquiesced in by persons engaged in buying and selling. * * * A usage which is to govern a question of right should be so certain, uniform and notorious as probably to be known to,· and understood by, the parties as entering into their contract." This is cited as the language of Judge PAXON

in *United States vs. Duval, Gilpin,* 356; *Potts vs. Aechternacht,* 93 *Penn. St.,* 138. This statement of the law is certainly just and right. The appellant did not sell his whole property. He only effected a sale of the leasehold. He got only fifteen thousand dollars for the house resting on the ground which he *leased,* instead of sold. To get the means he wanted, he would have to get some other agent to sell the ground rent, and it is not reasonable to allow the agent pay for more than the fifteen thousand dollars worth actually sold, unless it clearly appeared that the seller contracted so to pay either expressly or by implication. What the agent undertook to do was not accomplished. He did not, therefore, earn his commissions on the value of the whole property. We have already adverted to the only evidence respecting appellant's dealings, of which evidence was given in commenting on the first prayer of the plaintiffs. The principle asserted by the eighth prayer of the defendant is that a broker cannot act for both seller and purchaser without the full knowledge and consent of each, because their interests are in conflict. That is undeniably the law, and has been maintained by this Court most positively in *Schwartze vs. Yearly,* 31 *Md.,* 271, and *Raisin vs. Clark,* 41 *Md.,* 159. But objection is made to its application in this case, first, because it is contended there is no evidence to support the prayer, and secondly, because the prayer is composed of three propositions, distinct in themselves, and which are put to the jury disjunctively, and it is, therefore, calculated to mislead the jury.

We are clearly of opinion that there was some evidence in support of the contention that Stump was acting for both Blake and Fowler, without the knowledge of Blake. Stump testifies himself to having been requested by Fowler to see what he could buy Blake's house for; and that in pursuance of that request he approached Blake, told him he was a real estate man, and asked if

he could sell his house for him; that he was told that he might, and that his price was $40,000. Instead of seeking to get from Fowler Blake's price, he told Fowler that he thought thirty thousand dollars would buy the house, and which offer was made in writing to Blake. This he says in his letter to Fowler of 26th January, 1889. He also said on cross-examination, in his testimony, that he "did his best to get the house, including lot in rear on Biddle street, for Mr. Fowler at $30,000." This lot in the rear he says was not part of the lot which Blake authorized him to sell, and asked $40,000 for. It is also in evidence that Fowler so far regarded Stump as acting in his interest, that after he had purchased from Blake he offered Stump one hundred and fifty dollars compensation, which it is true was not received. It is very clear all this was some evidence tending to support the hypothesis of the prayer.

In *Schwartze vs. Yearly*, 31 *Md.*, 271, a prayer almost exactly like this one was under consideration. Indeed, that prayer seems to have been copied, with the addition of but one phrase. In that case there was a question about the revocation of the agency, and the appointment of another agent, and this Court thought the prayer too broad because it did not restrict the bad faith, supposed to exist, to the period within which the plaintiff was in the employment of the defendant. In the present case there is no contention that any one else was appointed agent of appellant in the place of the Messrs. Stump, the plaintiffs, and the objection which was taken by the Court to the prayer in *Schwartze's Case* is sought to be corrected in this prayer by the introduction of a phrase restricting the bad faith to the period whilst the appellees were acting as agents for the appellant. This prayer reads as follows : "That although the jury shall believe from the evidence that the plaintiffs were employed by the defendant to effect the sale

in question, if the jury shall also believe that prior to the commencement of negotiations, the purchaser introduced by the plaintiffs, and who bought the property, had himself employed the plaintiffs to procure the property described in the evidence, and that the plaintiffs, in pursuance of this employment, commenced to treat with the defendant for the purchase of the property; or if the jury shall believe that at any time whilst the plaintiffs were in the employ of the defendant the said plaintiffs were in respect to this purchase and sale in any way in the employ or acting as agent of the purchaser (beyond the power or authority to bind them to a sale by a memorandum), or that the plaintiffs were acting in the interest of the said purchaser, then the plaintiffs are not entitled to recover.'' An objection has been urged to this prayer that it presented three distinct propositions disjunctively coupled, and was thus made misleading. We do not think the prayer, when carefully examined, is liable to the criticism suggested, or was calculated to mislead the jury. What seems to be three propositions is but a presentation of the same idea in different phraseology. The first paragraph of the prayer or ''proposition,'' as it is denominated by appellees, only asserts that if the plaintiffs were employed in and about the sale of the property by both buyer and seller, and before he was employed by the seller, he was employed by the purchaser, and that in pursuance of the employment by the latter he conducted the negotiations with Blake, then they cannot recover. The second branch of the prayer only asserts the same thing in substance, without indicating any particular facts bearing on the subject, by saying if they found he was, at the time while he was acting for the appellant, also acting for the appellees; and then by the third so-called proposition adds in further explanation of the language just used ''or was acting in the interest'' of the ap-

pellees, then they cannot recover. The latter clause is to be read as following the words "whilst the plaintiffs were acting in the employ of the defendant," taking the place of all that do follow it in regular sequence up to the word "or." The last phrase is merely explanatory of what kind of action the appellees were taking under the employment of Mr. Fowler. The prayer in the three forms of expression asserts nothing more than that if the plaintiffs were not in good faith acting wholly in the interest of Blake, then they are not entitled to recover from Blake, and we do not see how it was possible for the jury to be misled in any way by it. It asserts sound doctrine, well recognized in this State and everywhere, we think, and ought to have been granted.

The judgment must be reversed, and a new trial will be ordered.

*Judgment reversed, and*
*new trial ordered.*

