# COMMERCIAL TRANSFER COMPANY, ET AL. *v.* QUASNY

[No. 161, September Term, 1966.]

*Decided March 8, 1967.*

The cause was argued before HAMMOND, C. J., and MAR-
BURY, OPPENHEIMER, McWILLIAMS and FINAN, JJ.

*Christopher A. Hansen,* with whom were *Jesse Slingluff,*

*Philip T. McCusker* and *Piper & Marbury* on the brief, for appellants.

*Philander B. Briscoe* for appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

The principal question in this Workmen's Compensation appeal is the admissibility of a hearsay statement by an employee to his wife shortly before his death. The claimant, the appellee, brought her claim as wife and sole dependent of the deceased, John Quasny (Quasny), an employee of Commercial Transfer Company, alleging that her husband's death, which occurred as a result of a heart attack on January 9, 1963, was caused by an accidental injury compensable under the provisions of the Workmen's Compensation Act, Code (1957), Article 101. Her claim was allowed by the Workmen's Compensation Commission and, on the appeal to the Baltimore City Court, heard by a jury with Judge Grady presiding, at which most of the testimony was given de novo, the Commission's order was affirmed. The appellants, the employer and its insurer, contend not only that the wife's statement was improperly admitted, but also that their objection to certain medical testimony was improperly overruled, and that the testimony, even with the disputed statements admitted, was insufficient to establish an accidental injury, or that the injury was the cause of Quasny's heart attack, and therefore that their motion for a directed verdict should have been granted.

At the time Quasny sustained his heart attack, he was 51 years of age. His height was five feet seven or eight inches, and his weight was estimated at between 180 and 200 pounds. He had enjoyed good health, and had not changed in appearance for several years. Dr. Sollod had been the Quasnys' family doctor for almost thirty years, and testified that, except for several attacks of kidney stones in 1935, Quasny was in good health until the doctor saw him at the hospital on the day of the heart attack. There was some evidence that Quasny had complained of indigestion for about four months before the attack and received pills from his doctor, but Dr. Sollod testi-

fied Quasny had never received any medicine from him over a prolonged period of time or for any serious ailment. Quasny had sustained injuries to his leg and toe several years before 1963 but there was no evidence that he had ever complained of shortness of breath or pain in the chest or arms. A neighbor characterized Quasny as a healthy, jolly man who never seemed to be sick. A co-worker of Quasny had seen him frequently over the years and Quasny "always looked pretty good" to him. When Quasny came to work the morning of his heart attack, he was laughing and joking.

Quasny was employed as a truck driver. Among his duties was the job of picking up various kinds of merchandise at the Camden Warehouse for transportation to the consignees. It was quite usual for him to pick up as part of the merchandise 55 gallon drums of glue which weighed between 500 and 600 pounds each. In picking up one of these drums, it was normal practice that a forklift driver would place the drum on the rear of the truck which was backed up to the loading dock. From there the truck driver, as part of the loading operation, would have to move the drum to the front of the truck. To move these barrels required tilting the barrel on its edge or rim and, while balancing it on the rim, rolling it to the desired position, where again it would have to be righted.

On Wednesday, January 9, 1963, Quasny ate a hearty breakfast, and went to work. At about 9:00 A.M. he was at the Camden Warehouses loading his truck. Parker Willis, a forklift driver working at the warehouse, who knew Quasny personally and who had seen Quasny load at that warehouse many times previously, placed a 55 gallon drum of glue on the back of Quasny's truck and, as he backed away from the truck, he saw Quasny take hold of the drum, pull it towards him and then tilt it and roll it or "chim" it towards the front of the truck. Willis stated he saw nothing which seemed unusual in Quasny's procedure, although he said he could not see Quasny after the latter left the back of the truck because it was dark in the truck. Willis could not say what happened in the truck. After he saw Quasny begin to roll the drum towards the front of the truck, Willis backed his tractor away.

Willis testified that a drum is not handled the same way every

time. "Maybe you set your hand one time to pull the barrel over; other times you might set the other hand against the side of the truck. You got to have one hand braced to get it over."

When Willis backed away or after he returned with another load, he found Quasny standing at the back of the truck "holding himself" and complaining that he was "feeling bad." Willis asked him what had happened and said: "Are you going to die?" An employee of the Baltimore and Ohio Railroad, Clarence Madden, came to the truck with a load of cake mix. Quasny started unloading the cake mix, and Madden left to get some more of the mix. When he returned, Quasny was sitting on the back of the truck, and said he did not feel good. Quasny got paler and paler, told another employee sent to get him that "I got terrific pain," and began moaning and vomiting. He was taken to the South Baltimore General Hospital in an ambulance, praying en route.

Mrs. Quasny, the appellant, arrived at the hospital at about 10:30 A.M. A priest had given her husband his last rites; the priest was still at the bedside when Mrs. Quasny arrived. Mrs. Quasny found her husband "a very, very sick man." He recognized her and called her by name. When she first arrived, her husband "was just like a piece of marble. He was cold and hard * * *" Quasny was under oxygen the entire day, with tubes in his nose. Mrs. Quasny was the only person with him until about 5:00 P.M. except for the priest and the medical attendants. As the day went on, Quasny recovered somewhat, and talked to his wife at intervals, and asked for a cigarette.

Mrs. Quasny testified, over objection, that at this time, she asked her husband "What happened to you today?" and testified:

> "He said he had a heavy drum on the back to move from the back to the front of the truck. While moving this heavy drum, he said it tilted over to him and while trying to upright it a terrific pain struck him in his chest, and he said the pain grew so severe that he thought his end had come."

Afterwards, some of Mrs. Quasny's relatives came in the room and Quasny spoke to them, calling them by name. He was

speaking normally. Mrs. Quasny stayed until about 8:30 that evening. Quasny died on Friday, January 11, at about 4:00 P.M. He had never been out of danger from the time of his arrival at the hospital.

This Court, in a number of cases, has considered whether a hearsay statement as to the cause of an accident is admissible, under Section 11 of the Act, which provides that "the Commission shall not be bound by the usual common law or statutory rules of evidence or by any technical or formal rules of procedure * * *" Our review is limited to the questions raised in the appeal to the lower court permitted by the Act, but, as Chief Judge Bond said, for the Court, in *Standard Oil Co. v. Mealey,* 147 Md. 249, 254, 127 Atl. 850 (1925) :

> "[I]t seems unquestionably true that the mere allowance of an appeal must intend a review of the decision of the commission with some advantages from the special training and methods of the judicial tribunal. Yet to test the award or decision of the commission strictly by the rules of judicial proceedings must often subject it to requirements which a commission would be unable to meet, and might in effect make it to some degree impracticable for the commission to work effectively without surrendering the freedom given it in section 10 [now section 11]. We conclude, therefore, that the courts are required to adapt themselves somewhat to the increased latitude allowed to the commission, and that this adaptation must at the same time, and as far as it can consistently be done, avoid abandonment of cautions and safeguards which seem necessary, not only for constitutional due process of law, but also for the assurance of reliability in the basis of adjudication."

In the present case, Mrs. Quasny was permitted to testify as to her conversation by the Commission as well as by the court below.

In *Mealey, supra,* the lower court admitted statements of a deceased workman said to have been made to his wife and his physicians that the deceased had fallen and struck his side at

a spot where a malignant growth later developed. The Court held the statements were properly admitted. Chief Judge Bond said the statements "refer to a simple fact, and were such as to leave no room for substantial misunderstanding * * *" 147 Md. at 255. In two cases, the hearsay evidence whose admission was approved by the Court were statements of the deceased that there had been an accident; in each case, the statements were made to the wife and to another person. *Waddell George's Creek Coal Co. v. Chisholm,* 163 Md. 49, 161 Atl. 276 (1932); *Bethlehem Steel Co. v. Traylor,* 158 Md. 116, 148 Atl. 246 (1930). In *Horn Ice Cream Co. v. Yost,* 164 Md. 24, 163 Atl. 823 (1933), the admitted evidence was that of the mother of the deceased employee, who, when he came home on the day of the accident, told her he had been hit on the side of his head by a tub. The testimony of eye-witnesses permitted an inference that the accident had happened in the way described. In *Spence v. Bethlehem Steel Co.,* 173 Md. 539, 197 Atl. 302 (1938), the only evidence of the cause of the alleged accident was the hearsay statements of the deceased to his wife and physician that he had been overcome by poisonous gas while working. The statements were held admissible. After reviewing the prior cases to which reference has been made, Judge Sloan, for the Court, said at 173 Md. 549-50:

> "This court has not said in any of the cases cited that the safeguards against the admission generally of hearsay evidence in compensation cases should be disregarded, but that it should be received with great caution, and so far has only approved the admission of statements of employees who, because of their intervening deaths, could not testify themselves, and then their hearsay statements have only been admitted when they have been made so promptly after the alleged injury and were so closely related to the facts and physical conditions as to give them substantial probative value."

*Standard Gas Equipment Corp. v. Baldwin,* 152 Md. 321, 136 Atl. 644 (1927), held inadmissible a death certificate of the health department of Baltimore City; the certificate contained

no medical facts and stated that the data contained in it, which referred to an accident, was on the information of the deceased employee's widow. The Court said: "The evidence had no probative value. It was not only hearsay, but it lacked the *indicia* of reliability which under some circumstances justifies the admission of hearsay testimony in these cases." 152 Md. at 326.

In their able brief and argument, the appellants seek to deduce from these cases a rule that, for a hearsay statement by the widow of a deceased employee to be admissible, there must be some other corroborative testimony, and the statement must refer to a simple fact and leave no room for substantial misunderstanding. However, this Court has been careful to formulate no binding rule to determine whether or not a hearsay statement of the nature here involved is admissible; it has laid down guidelines, but, as in other fields of the law, the cases have been decided on the particular facts.

In this case, in our opinion, the circumstances and physical conditions give the widow's statement substantial probative value. It is true that, chronologically, her conversation with her husband took place six to eight hours after the incident; as Judge Grady correctly said, it could not be considered part of the *res gestae*. However, Quasny had been in desperate physical condition until about the end of this period. He had not been able to see anyone, except his wife, the priest and the medical attendants. The evidence indicates that, until the time he answered his wife's natural inquiry as to what had happened, he had not been physically able to make a statement. His reception of the last rites by the priest upon his admission to the hospital that morning gives added significance to Quasny's statement to his wife, when he was able to talk to her. It is the totality of these circumstances which, in our opinion, makes the statement admissible.

We do not agree that the statement referred to an ambiguous act of tilting and righting the drum, which could have applied to Quasny's usual work. He told his wife the terrific pain struck him when the drum tilted over to him and while he was trying to upright it. The statement sets forth a simple event, outside the usual scope of the employment. Moreover, while the statement was not corroborated—no one saw Quasny while

he was in the truck—it was uncontradicted and Quasny's explanation of what had happened was coherent and plausible. There is no difficulty in understanding the stress and strain which ensues if a 500 pound drum, instead of being tilted and balanced on its rim for rolling forward, tilts back on to the employee and has to be righted by him, by pushing the weight from him.

There was conflicting medical testimony as to the causal relationship between the incident recounted by Quasny to his wife and his heart attack. Dr. Genecin testified for the claimant and Dr. Goldberg for the employer. Both doctors are cardiological experts; neither had examined Quasny during his lifetime; both testified on the basis of hypothetical questions. The question put to Dr. Genecin, in our judgment, contained all the relevant and material facts essential to the formulation of a rational opinion, on the assumptions that Quasny's statement, as recounted by his wife, was correct and that Quasny was in good health prior to the incident on the morning of January 9. As to the assumptions in the hypothetical question, we have held that the claimant's testimony as to her husband's statement was properly admissible and there is ample testimony in the record to support the assumption of Quasny's prior good health. Dr. Genecin had heard the testimony before the Commission and Dr. Sollod's testimony, and had examined the hospital records. In answer to the hypothetical question, he was of the opinion that Quasny died of a myocardial infarction, thrombosis of the coronary arteries (a sudden heart attack) and that "the stress of trying to support and balance a tilting weight, which this big drum constituted, was a sufficient cause for the unusual circumstances and precipitated an infarction." On cross-examination, he first said he based his opinion on the assumption that the drum slipped, but then reiterated his original opinion without the assumption that the drum had slipped and in answer to a question by the court said that it was some sort of stress of supporting weight that led to the condition. Judge Grady denied the appellants' motion to strike Dr. Genecin's testimony, on the ground that the objection to the doctor's testimony under cross-examination went merely to the weight of his opinion and not to its admissibility. We find the Judge's analysis of the testimony to be correct and agree with his ruling.

We find without merit the appellants' argument that, even if the testimony of the claimant and of Dr. Genecin was properly admitted, the evidence, as a matter of law, failed to show an accidental injury resulting from some unusual exertion or strain. It is true that, in Maryland, "the term 'accidental injury' does not include unexpected results not produced by accidental causes and that this Court has consistently held that in order for an injury to be accidental and therefore compensable it must result from some unusual exertion or strain or some unusual condition in the employment." *Bethlehem Steel Co. v. Golombieski*, 231 Md. 124, 129, 188 A. 2d 923 (1963), and cases therein cited. However, as Chief Judge Brune said, for the Court, in *Bethlehem Steel Co. v. Jones*, 222 Md. 54, 57-58, 158 A. 2d 621 (1960) : "The burden of proof may be sustained by reasonable inferences having a substantial basis in circumstantial evidence, where, as in this case, there are no eyewitnesses through whose testimony direct proof of an accidental injury might be furnished." In that case, the employee had been found dead in a bin thirteen feet below the level of the hopper car in which he had been working; the evidence was held sufficient to warrant an inference that the deceased had fallen from the position in which he had been working. See also *Baltimore Towage & Lighterage Co. v. Shenton*, 175 Md. 30, 199 Atl. 806 (1938). In the present case, Quasny's statement as recounted by Mrs. Quasny and Dr. Genecin's opinion testimony support the inference that there was an unusual exertion or strain when the heavy drum tilted over to Quasny and he tried to upright it, and that this event brought about the heart attack which resulted in Quasny's death. We find the evidence legally sufficient to support the finding that the claimant's husband had sustained an accidental injury arising out of and in the course of his employment.

*Judgment affirmed; costs to be paid by appellants.*