# MIZE *v.* VICTOR R. BEAUCHAMP ASSOCIATES, INC., ET AL.

[No. 189, September Term, 1966.]

*Decided March 8, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES, and FINAN, JJ.

*Martin E. Gerel* for appellant.

*John F. Linsenmeyer* and *George L. Huber, Jr.,* with whom was *Eugene A. Edgett, Jr.* on the brief for appellees.

BARNES, J., delivered the opinion of the Court.

Edd Morrice Mize suffered an injury on November 27, 1964, arising out of and in the course of his employment. He has appealed from the granting of a directed verdict in favor of the employer and its insurer by the Circuit Court for Prince George's County at the close of the claimant's case, thereby affirming the decision of the Workmen's Compensation Commission against the claimant. The sole question in the case is whether a jury could reasonably find that the injury was "accidental" within the meaning of Code, Article 101, sec. 15 and, therefore, compensable under the Workmen's Compensation Act.

Mize, a carpenter of 31 years experience, was employed by Beauchamp in the construction of a concrete building. Carpenters were used to install a wooden framework (form) for the pouring of concrete, a type of work which Mize had done "right much of" in the course of his trade. On November 26 and 27, 1964, Mize's "particular job was to put up the framing for the roof" of the building. This work was done in the following manner: a framework of parallel joists (beams), spaced 16 inches apart, was erected using 2″ x 4″s or 4″ x 4″s. Standing or kneeling on a joist, Mize would turn to receive pieces of plywood from a helper who would pass them from below or behind the carpenter. The plywood was then laid across the joist and secured to it, forming part of a deck, on which concrete later would be poured. Mize would then kneel on a different part of the joist, or on the finished decking, turn to receive more plywood and install it, thus adding to the deck. Where columns were encountered, a "low head" or "drop head" (a recessed level deck, four feet by five feet) was constructed around it, so that the rest of the decking was about five inches higher than the "drop head."

While constructing one of these drop heads, Mize turned to receive a piece of plywood and felt a sharp pain in his lower back. Mize testified that in laying out other drop heads on this job, the plywood had been "shoved up from down below." At the time of the injury, the plywood was handed to him from behind, but Mize had been required to twist around to get plywood at other times either on the day of the injury or at other times on the job.

Viewing this evidence in the light most favorable to the claim-

ant, we believe, as did the court below, that a jury could not reasonably have found the injury to Mize's back was "accidental." We have often reiterated our strict construction of the term "accidental injury": "[I]n Maryland, unlike many other jurisdictions, the phrase 'accidental injury' does not include unexpected results not produced by accidental causes, and this Court consistently has held that for injury to be accidental it must result from some *unusual* strain or exertion of the employee or some *unusual* condition of the employment." (Emphasis supplied). *Vaughan v. Mayor and City Council of Baltimore,* 229 Md. 547, 550-51, 184 A. 2d 842 (1962) and cases therein cited; *Bethlehem Steel Co. v. Golombieski,* 231 Md. 124, 188 A. 2d 923 (1963) ; *Kelly-Springfield Tire Co. v. Daniels,* 199 Md. 156, 85 A. 2d 795 (1952) ; *Commercial Transfer Co. v. Quasny,* 245 Md. 572, 227 A. 2d 20 (1967).

On the evidence thus far discussed, unlike *Golombieski, supra,* a jury could not reasonably have found the injury to result from unusual exertion of the employee or some unusual condition of his employment. Mize, as his testimony shows conclusively, was thoroughly accustomed to turning to receive plywood. He was also completely familiar with the working conditions involved in constructing drop heads, although their construction required "a little extra work" compared to installing the rest of the deck.

Introduced at trial,[1] however, was the "Employers' First Report of Accident," which stated:

"Working on roof, picked up 4 x 8 sheet of plywood. Wind caught plywood, and twisted Mr. Mize, hurtin [sic] his back. * * *."

The report, signed by "Edward L. Morris, Treasurer," tends to show that Mize's injury was caused by an unusual and unexpected strain. The following colloquy with respect to the report occurred at the Commission hearing:

"COMMISSIONER PAPER: * * * Now listen to me—* * * is this [report] true?

---

1. The report was introduced in evidence at the hearing before the Workmen's Compensation Commission, and the record before the Commission was, without objection, made part of the record at trial.

"THE WITNESS [Mize] : I had no part of that report so help me. I had no part. I didn't tell that to anyone.

"MR. GEREL: Mr. Mize, listen to the Commissioner. Don't argue with anybody. He is asking you a question—just answer the question.

"THE WITNESS : I didn't have any part in that.

"COMMISSIONER PAPER: You didn't say that.

"THE WITNESS : No. I had no part of it.

"MR. GEREL: You didn't say the wind caught the piece of plywood twisting and hurting your back?

"THE WITNESS : No, sir.

\* \* \*

"BY MR. GEREL: Q. Who is Edward L. Morris? Do you know him? \* \* \* A. No. Unless it is one of the officers that works in the company's office.

"Q. You are not familiar with the office people? A. No.

\* \* \*

"MR. GEREL: And what can you tell us about the weather that day?

"THE WITNESS : It was fairly calm that day."

No claim is made that the report is inadmissible, as not within the liberal business records exception to the hearsay rule, provided by statute. Code, 1957, Article 35, sec. 59. Cf. *Aravanis v. Eisenberg,* 237 Md. 242, 262, 206 A. 2d 148 (1965). The information contained in the report is, without dispute, part of the evidence of the case.

The general rule in workmen's compensation cases is that before a motion for directed verdict may be granted for the employer, the court must assume the truth of the evidence presented by the claimant and all the inferences of fact fairly deducible from it. *Coates v. J. M. Bucheimer Co., Inc.,* 242 Md. 198, 218 A. 2d 191 (1966) and cases therein cited. Where the testimony of the plaintiff's witnesses is in direct conflict on a material issue of fact, the resolution of the factual conflict is usually left to the jury. *Ferguson v. Wootten,* 240 Md. 186, 190-91, 213 A. 2d 498 (1965). This rule, however, was formu-

lated without consideration of the statute carving an exception for business records from the hearsay rule, without requiring production, or even identification, of the extrajudicial declarants who supplied the information. We think it necessary that the new liberality in the admission of hearsay evidence should be coupled with an increased willingness on the part of our courts to examine the finality of such evidence on the issue of sufficiency. See Weinstein, *Probative Force of Hearsay,* 46 Iowa L. Rev. 331, 341-42, 350-52 (1961).

The only evidence tending to show Mize's injury was "accidental" was the accident report prepared by the company treasurer. The official was not produced at trial, so that he could be examined as to the sources of the information in the report, compare *Commercial Transfer Co. v. Quasny, supra,* or even so he could verify that the report was accurately made in the regular course of the employer's business. The description of the "accident" in the report was totally contradicted by the claimant's own testimony. Even though the admissibility of the hearsay statements contained in the report may not now be challenged, they emerged so inherently weak as to be legally insufficient to support a jury finding of "accidental injury." Cf. *Danahy v. Cuneo,* 130 Conn. 213, 216-17, 33 A. 2d 132 (1943).

> *Judgment affirmed, costs to be paid*
> *by the appellant.*