FISHER BODY DIVISION, GENERAL MOTORS
CORPORATION *v.* ALSTON

[No. 430, September Term, 1967.]

*Decided January 13, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, FINAN and SINGLEY, JJ.

*Daniel E. Klein, Jr.,* with whom were *Klein & Harlan* on the brief, for appellant.

*Louis J. Weinkam,* with whom were *Marvin B. Steinberg* and *Gomborov, Steinberg & Schlachman* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

The appellee, Lewis Nathaniel Alston, filed two claims with the Workmen's Compensation Commission of Maryland. One claim alleged that the appellee sustained an accidental personal injury arising out of and in the course of his employment with appellant, Fisher Body Division, General Motors Corporation, (Fisher), employer, self-insurer, on September 10, 1964. The other claim alleged that he sustained a second such injury on April 9, 1965. After hearing testimony concerning both claims, the Workmen's Compensation Commission, on March 17, 1966, disallowed these claims. Alston seasonably appealed both decisions to the Superior Court of Baltimore, where the jury found in his favor. The trial judge denied motions for judgments *n.o.v.,* or in the alternative new trials, and the employer has appealed.

The claimant testified at the trial that he had been in the employ of Fisher since November 1963. In April of 1964, he took a position as a "gate loader-unloader." He explained that a "gate" was a skeleton frame, approximately the height and length of an automobile body, upon which various parts were clamped and then welded. Sometimes the clamps were welded to the body or to the parts being added. Alston's job was to open the clamps that had been closed, take out a crossbar, open the foot pedals, and pull the gate out as the bodies of the cars

came down the main assembly line. Appellee testified that these clamps are released by slapping them with the hand, hitting them with a bar, or kicking them. He approximated that from fifty to fifty-four cars go through the line during the course of one hour, and that there are from thirty to forty clamps on each gate.

As to his first injury, Alston testified that on September 10, 1964, while he was working as a gate loader-unloader, one of the gates was welded to the body of a car and he could not pull it free. A buzzer sounded for help to come but he continued trying to get the gate off. He said "I had braced myself and was giving the gate a good tug when it came free all of a sudden and I twisted my back." Although he stated that his job was to work with the gate until help arrived, he testified on cross-examination that he had never pulled one loose by himself.

After he reported his injury to his foreman, he went immediately to the plant dispensary for treatment. The doctor was not at the dispensary at the time, but a nurse gave him some muscle relaxing pills. The next day he saw Dr. Houpt at the plant, who examined him. From September 10, 1964, until April 9, 1965, appellee did not lose any time from work as the result of his injury on September 10, 1964.

On April 9, 1965, Alston was still on the gate loader-unloader job. Before the bodies reached his position on the assembly line, they passed over a pit. Appellee stated that another worker, new on the job, in that pit was supposed to hit a clamp underneath the wheel housing. He testified that on the date in question about fifteen jobs came off the line where that clamp was still closed and that he had to bend down and open the clamp. He reported this to the foreman who said that he would straighten out the matter. Subsequently, another body came down the line with the clamp closed and when Alston bent down to open it it was welded to the gate. He explained that usually all he had to do was hit it and it would come loose, but on this occasion ". . . I hit it and it didn't come loose so I had to bend down and pull it and give it a good jerk. When I did my back gave on me and bent and I couldn't straighten up." After this injury, he again went directly to the dispensary.

In addition to his own testimony, the appellee called Dr. Al-

bert C. Burwell, who, after qualifying as a general practitioner, stated that he was the Alston family physician. The doctor testified that the appellee visited him some time in May of 1965 because Alston stated that he had hurt his back on the job on two different occasions. He further testified that appellee told him he was trying to break a gate loose and it suddenly gave way and caused him to hurt his back. Concerning the second accident, he explained Alston told him he was trying to loosen a clamp and it suddenly gave way. Dr. Burwell did not take a written history from him but took only a verbal history because he was not going to treat the claimant since he was already under the care of the physician at the plant. However, at a later date, Alston came back to see him, and Dr. Burwell did give him a diathermy treatment to his back. At this point, Dr. Burwell's direct examination ended, and the appellant made a motion to strike his testimony on the ground that he was not a treating physician. This motion was denied by the trial court.

On cross-examination, Dr. Burwell was questioned concerning a group insurance program form that he completed on behalf of the appellee. On redirect examination, the doctor testified, over objection, concerning two other insurance forms that he had filled out for the claimant. Alston then rested his case. The appellant made a motion for a directed verdict both before and after presenting its side of the case. These motions were overruled and the jury returned verdicts reversing the orders of Workmen's Compensation Commission. Timely motions in each case for judgment *n.o.v.*, or in the alternative a new trial, were filed by the appellant, and after hearing arguments the lower court denied both motions on January 2, 1968.

On appeal, Fisher presents three questions: (1) did the lower court err in overruling appellant's motion to strike the testimony of Dr. Burwell; (2) did the lower court err in overruling the appellant's objection to certain testimony of Dr. Burwell; and (3) did the lower court err in denying appellant's motion for directed verdict submitted in both cases at the conclusion of the appellee's cases and re-submitted at the conclusion of the entire cases.

In Maryland, it is established law that the history given a treating physician is admissible as an exception to the hearsay evidence rule. *Riddle v. Dickens*, 241 Md. 579, 217 A. 2d 304;

*Yellow Cab Co. v. Hicks,* 224 Md. 563, 168 A. 2d 501. Such evidence is deemed to be trustworthy because when an individual goes to a doctor for treatment there is a strong inducement for him to speak truthfully. This rationale does not apply when considering a history given to a doctor consulted only with a view toward his testifying in a law suit. Thus, this Court has constantly recognized the rule that a non-treating physician can not relate the history given to him by a litigant. *Rossello v. Friedel,* 243 Md. 234, 220 A. 2d 537; *Wilhelm v. State Traffic Comm.,* 230 Md. 91, 185 A. 2d 715; *Wolfinger v. Frey,* 223 Md. 184, 162 A. 2d 745; *Parker v. State,* 189 Md. 244, 55 A. 2d 784. The appellant argues that Dr. Burwell should not have been allowed to testify concerning the history that Alston gave him on the grounds that Dr. Burwell was not a "treating physician" and that his testimony was improperly admitted into evidence. From an examination of the record, it is apparent that Alston's purpose in visiting Dr. Burwell, his family physician, was to receive treatment for his injury and the fact that no treatment was actually rendered at the time is not sufficient to remove the instant case from this exception to the hearsay rule. This is not a case where a physician was consulted for evaluation only, *Rossello v. Friedel, supra,* or with a view toward his testifying in a case, *Wolfinger v. Frey, supra.* Appellant visited his family physician for treatment purposes, and at a later date, Dr. Burwell did in fact render some treatment. We hold that the lower court did not err in admitting the doctor's testimony in this respect.

Next, the appellant contends that the lower court erred in allowing Dr. Burwell to testify on redirect examination, over objection, concerning the completion of two insurance forms for the appellee. Alston urges that since the appellant questioned the doctor on cross-examination about the completion of another insurance form the questions asked on redirect were proper. On cross-examination the doctor testified that prior to the appellee's visit in May 1965, he hadn't seen the appellee since he was a boy. Immediately, in order to impeach his credibility, the appellant showed the doctor an insurance statement of a claim for sickness and accident benefits on appellee's behalf dated June 4, 1964, and asked him if he had signed it. Dr.

Burwell responded that he had signed the form. On redirect examination, the doctor was permitted to identify two other insurance forms he completed after the injuries for the appellee. Further, he was allowed to read from these forms as to the cause of each injury. As to the first, "Caused—he had a low back sprain caused when attempting to lift a clamp." As to the second, "States that he hurt his back while—I can't make out this word myself—taking a clamp on a gate."

As a general rule, redirect examination must be confined to matters brought out on cross-examination. However, it is within the court's discretion to allow the introduction of something new or forgotten if the purposes of justice seem to demand it, and this Court will not interfere unless there is a clear abuse of such discretion. *Ottenberg v. Ryan & Riley Co.*, 130 Md. 38, 99 A. 984; *Blake v. Stump*, 73 Md. 160, 20 A. 788. We need not decide whether the testimony was improperly admitted since, even if it were, the error was harmless. Dr. Burwell's testimony on redirect examination was limited to the description he wrote down on the insurance form concerning how the appellee's injuries occurred. His testimony corresponded to the testimony he gave on direct examination when he described the history given to him by Alston when he first saw him in May of 1965. In effect, Dr. Burwell's testimony on redirect did not add any new evidence, and was cumulative and unnecessary. The appellant has failed to show its introduction was prejudicial.

Finally, the appellant contends that the lower court erred in denying its motions for directed verdicts submitted in both cases at the conclusion of the appellee's cases and resubmitted at the conclusion of the entire cases. In short, Fisher maintains that the evidence was insufficient to submit to the jury. We do not agree.

In order for an injury to be compensable under the Maryland Workmen's Compensation Law, there must be an accidental injury resulting from some unusual exertion or strain or some unusual condition in the employment. *Mize v. Beauchamp Associates*, 245 Md. 583, 227 A. 2d 5; *Commercial Transfer v. Quasny*, 245 Md. 572, 227 A. 2d 20; *Beth. Steel Co. v. Golombieski*, 231 Md. 124, 188 A. 2d 923. See *Voss v. City of Baltimore*, 246 Md. 345, 228 A. 2d 295. The testimony concerning

the injury on September 10, 1964, established that a gate was welded to the body of a car and it would not disengage. While the appellee was waiting for the foreman and another worker to help him, which was the normal procedure, he continued to pull at the gate and suddenly it came free and he twisted his back. Alston testified that he had never pulled a welded gate loose by himself and that he had always had the help of other workers. Under these circumstances, we hold that there was a sufficient amount of evidence to submit the case to the jury as to whether the unexpected release of the gate constituted unusual strain and unusual conditions of employment which produced an "accidental" injury.

With regard to the second injury, the appellee testified that a newly employed worker stationed in a pit was supposed to release a clamp underneath the wheel housing but that he failed to do so and approximately fifteen jobs came off the line with the clamp still closed. This meant that the appellee had to bend down and open the clamp. In Alston's own words:

> "I reported it to the foreman. I told him, I said, 'You know I am having trouble with my back and every time I bend down like that I am in pain.' So he went down and said he was going to take care of it, get everything straightened out and eventually another job came off the line with the clamp closed and when I bent down to open it it was welded. Usually all you have to do is hit it and it will come loose but I hit it and it didn't come loose so I had to bend down and pull it and give it a good jerk. When I did my back gave on me and bent and I couldn't straighten up."

In light of the fact that the normal procedure was for another employee to release the clamp that gave way, and since ordinarily "a good jerk" was not necessary to loosen the clamp, we hold that a jury could reasonably conclude from the evidence that an "accidental" injury had resulted from unusual strain or unusual conditions of employment.

In its brief the appellant has cited several cases where it was determined that the claimant did not sustain an accidental injury. However, these cases are distinguishable in that nothing

unusual happened to cause the injury. For example, in the case of *Mize v. Beauchamp Associates, supra,* a carpenter who injured his back when he turned around to receive a piece of plywood could not recover since he had previously received the plywood in the same manner and could not show that anything unusual had occurred. Appellant also urges that *Jackson v. Ferree,* 173 Md. 400, 196 A. 107, is analogous to the case at bar. Its reliance is misplaced. In that case, the claimant was an automobile mechanic who received a "jar" to his body while he was putting a wheel on the rear axle of a truck. Recovery was denied since Jackson could not establish that he was subjected to any undue stress or strain. To like effect are *Eastern Shore Co. v. Young,* 218 Md. 338, 146 A. 2d 884; *Rieger v. Wash. Sub. San. Comm.,* 211 Md. 214, 126 A. 2d 598; *Kelly-Springfield Co. v. Daniels,* 199 Md. 156, 85 A. 2d 795.

There are other Maryland cases where the fact situations presented much weaker cases than the ones at bar in which the employers' motions for directed verdicts were overruled and the questions of accidental injury were held to be jury questions. For example, in *Beth. Steel Co. v. Golombieski, supra,* the claimant, a mechanical repairman, suffered a ruptured aneurysm when he strained himself attempting to disconnect a corroded union on a pipe. In that case, the employee testified that it was the first time he had "ever attempted to pull that hard." In *Commercial Transfer v. Quasny, supra,* a jury was allowed to determine that an accidental injury had occurred when the employee had suffered a heart attack after he attempted to upright a heavy drum which had tilted over on him while he was moving it. See also *Dayton v. Davis,* 218 Md. 614, 147 A. 2d 699; *Baltimore & Ohio R.R. Co. v. Zapf,* 192 Md. 403, 64 A. 2d 139; *Ross v. Smith,* 169 Md. 86, 179 A. 173.

For the above reasons we conclude that the lower court did not commit any reversible error so that the judgments must be affirmed.

*Judgments affirmed, costs to be paid by appellant.*