WHITING-TURNER CONTRACTING COMPANY,
EMPLOYER, AND EMPLOYERS MUTUAL LI-
ABILITY INSURANCE COMPANY OF WIS-
CONSIN, INSURER *v.* EVERETT J. Mc-
LAUGHLIN, CLAIMANT

[No. 282, September Term, 1970.]

*Decided March 9, 1971.*

The cause was argued before MURPHY, C.J., and AN-
DERSON and MORTON, JJ.

*Hyman Ginsberg,* with whom was *A. Paul Kaye* on the
brief, for appellants.

*Thomas S. Santer,* with whom were *Martin E. Gerel*
and *Leonard J. Ralston, Jr.,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

The question presented by this Workmen's Compen-
sation appeal is whether the paralysis suffered by the ap-
pellee McLaughlin resulted from an "accidental personal
injury" within the meaning of Maryland Code, Article
101, Section 15.[1] The Workmen's Compensation Commis-
sion found that the injury was not accidental and,
hence, was not compensable under the Act. On appeal,
the Circuit Court for Montgomery County, sitting with-
out a jury, found that the injury was accidental and re-
versed the decision of the Commission.

The pertinent facts are these: On August 15, 1968,
McLaughlin, a 49 year old labor foreman employed by
appellant contracting company, was at work supervising
a number of laborers pouring concrete into forms on a
building construction project. McLaughlin had expected
thirty-five yards of concrete to be at the job site when
he reported for work that morning, but it had not been
delivered when he arrived. Later that morning, the con-

---

1. Under this Section, an employer is required to pay Workmen's
Compensation benefits for "an accidental personal injury sus-
tained by the employee arising out of and in the course of his em-
ployment. * * *" That the injury arises out of and in the course of
the workman's employment does not alone make it compensable;
it must, in addition, be an accidental one. *See Fisher Body Division
v. Alston,* 252 Md. 51; *Rieger v. Washington Suburban Sanitary
Commission,* 211 Md. 214.

crete began arriving but a shortage soon developed. Mc-Laughlin discussed the shortage with his supervisor Larry McGinnis and with his superintendent Jack Thompson. Each assured him that more concrete would be delivered to the job, and McGinnis told him not to worry about it. McLaughlin was nevertheless concerned because he was behind schedule, feared rain, and wanted to avoid the cost that would be involved to his employer in pumping out the forms in the event it did rain. He also wanted to make a good impression on his employer. He did not eat lunch. The continuing shortage of concrete irritated him and his irritation "was just building up" as the day progressed. McLaughlin again pressed Mc-Ginnis, insisting that more concrete be delivered to the site. The discussion between the two men became heated. McGinnis, who at the time was "curved over" an open hole, "wheeled around" with both his knees bent, and his hands clenched, and said to McLaughlin:

> "* * * if you're running this job, this would be all right, but you're not running this f'ing job."

At this point, McLaughlin lost his power to speak and his right side became paralyzed. He was hospitalized for three weeks, the medical evidence in the case showing that as a result of the "extreme excitement" generated by the verbal encounter with McGinnis, McLaughlin had suffered a vascular insufficiency of the left carotid artery. It was McLaughlin's testimony that his argument with McGinnis was an extreme one, but no threats were involved. There was evidence that McLaughlin had lost his power of speech for approximately fifteen minutes while on the job two weeks prior to August 15, 1968.

In *Schemmel v. Gatch & Sons,* 164 Md. 671, 680-681, it was said: "The word 'accident' in its ordinary and usual implications is associated with ideas of trauma, and involves to a degree at least elements of force, violence, and surprise. But in Workmen's Compensation law its meaning has been expanded to include any mischance re-

sulting in physical injury to the bodily tissues *produced by some unusual and extraordinary condition or happening in the employment.* It has therefore been interpreted to include such untoward occurrences as the rupture of an aneurism, pulmonary and cerebral hemorrhages, hernia, infection, and heart dilation, *arising out of some unusual or extraordinary condition in the employment,* even where the injury was due in part to pre-existing disease or physical abnormality in the claimant. * * * The word 'accident' or 'accidental' is usually considered in connection with the phrase 'arising out of,' and where it seems clear that the injury arose 'out of the employment' the tendency of the courts has been to give to the word 'accidental' a liberal construction in harmony with the general intent of the act, so as to find the injury compensable. As a result of that policy, such an injury as cerebral hemorrhage, *when occasioned by some unusual and extraordinary condition in the employment,* is by the great weight of authority held to be accidental in its nature." (Emphasis supplied.)

The claimant in *Schemmel* suffered a cerebral hemorrhage while at his work in a quarry on a day so extraordinarily hot that the quarry was forced to shut down. He had that day been subjected to dynamite explosions in the quarry, which released gas causing headaches to those exposed to it. The claimant's stroke occurred shortly after he emerged from the quarry. There was evidence that while he had high blood pressure, it was the abnormal conditions under which he worked that day that precipitated his stroke. In finding that the cerebral hemorrhage was "accidental" under the Act, the court noted:

"* * * where one suffers from very high blood pressure or a diseased condition of the arteries, the occurrence of such an injury may reasonably be expected as natural and probable under any circumstances, and, when it does occur naturally and as an incident of the disease, while

the stroke may be sudden, and the time of its occurrence unexpected, it can hardly be regarded as accidental. *But, when it is accelerated, by unusual or extraordinary conditions, or is caused by the effect of such conditions on a healthy person, it assumes the character of an accident, since but for such conditions it would not have occurred when it did.*" (Emphasis supplied.)

In *State Roads Commission v. Reynolds,* 164 Md. 539, the 74 year old claimant, employed as a road patrolman, was taken from his regular light work and ordered to load heavy stones in a truck. The day was extremely hot and claimant had to work in the sun. He sustained a heat stroke, causing his death. The court held at page 546 that an accidental injury "may mean any fortuitous, casual, and unexpected happening which causes personal disability or death which results from some unknown cause, or from the unexpected and unusual operation of a known cause." It concluded from the evidence that the injury would not have occurred "but for the heat of the day and the character of the work in which [claimant] was engaged"; that the working conditions, as applied to the claimant, who was doing other than his regular work, were unusual and extraordinary. In finding the injury to have been "accidental," the court said: (page 547)

"* * * the test of the compensability of injury said to have arisen out of the employment is not whether the employee is weak or strong, but whether the disability was proximately caused by some *unusual and extraordinary condition in his employment not usually and naturally incident thereto.*" (Emphasis supplied.)

In *Kelly-Springfield Co. v. Daniels,* 199 Md. 156, the claimant felt a sharp pain in his back while, in performing his usual duties, he stooped to put a heavy bag on a hook. The court, in finding the back injury not "accidental" under the Act, said: (pp. 159 and 161)

"It has been held by the great weight of authority that sudden and unexpected rupture of some portion of the internal structure of the body, as cerebral hemorrhage or apoplexy, or the failure of some essential function of the body, as heart failure or paralysis, brought about by the exertion of the employee while engaged in the performance of his duties, or by the conditions of the employment, even without any external happening of an accidental nature, is an accidental injury.

\* \* \*

"This broad rule, which has been adopted quite generally in the United States following the decisions in England, has not been fully accepted in Maryland. In this State the sudden and unexpected rupture of some portion of the internal structure of the body, or the failure of some essential function of the body, is held to be accidental injury *only when it results from some unusual strain or exertion of the employee or some unusual condition in the employment.*" (Emphasis supplied.)

In *Stancliff v. H. B. Davis Co.*, 208 Md. 191, the court was urged to reconsider its minority view that an injury is accidental only if it results from some unusual strain, or exertion of the employee or some unusual condition of employment. Specifically, it was argued that the term "accidental injury" under the Act should be deemed to include unexpected results as well as accidental causes. The court reviewed its earlier decisions and though recognizing that they were against the weight of authority, declined to depart from them.

In *Reiger v. Washington Suburban Sanitary Commission, supra,* the court reaffirmed its earlier holdings, stating that it would continue to reject the view that to be accidental "nothing more is required than that the harm be unexpected."

In *Bethlehem Steel Co. v. Golombieski*, 231 Md. 124, the court adhered to the rule that in Maryland the term "accidental injury" does not include unexpected results not produced by accidental causes and that in order for an injury to be accidental, and therefore compensable, it must result from some unusual exertion or strain or some unusual condition in the employment. Later cases remain in accord. *See Fisher Body Division v. Alston, supra; Mize v. Beauchamp Associates,* 245 Md. 583; *Commercial Transfer v. Quasny,* 245 Md. 572. It is thus clear that Maryland law requires an accident and not merely a result.[2]

In reversing the decision of the Commission, and finding that appellee McLaughlin suffered an "accidental injury" under the statute, the court below relied upon *Geipe, Inc. v. Collett,* 172 Md. 165. That case involved a claimant-truck driver who, in the course of driving his employer's truck on the public road, was suddenly and unexpectedly confronted by a man who jumped from the vehicle immediately in front of him. In an effort to avoid hitting the man, the claimant swerved his truck sharply to avoid the collision. He nevertheless struck the man. During the course of the sudden encounter, the claimant became nervous and excited, his hand became limp, and he immediately thereafter suffered a complete paralysis. The evidence showed that while the claimant had high blood pressure and hardening of the arteries, his involvement in the accident precipitated the breaking of a blood vessel which caused a cerebral hemorrhage producing the paralysis. In finding that the paralysis was accidental, the court did not depart from the settled law of the State, as enunciated in *Schemmel.* On the contrary, the court in *Geipe* relied on *Schemmel* in its holding "that an accidental personal injury takes place if the injury be a nervous shock that produces not a mere emotional impulse but a physiological injury as the proximate effect

---

2. The Maryland rule has been severely criticized. See 18 Md.L.R. 131.

of an unforeseen or unexpected event, which occurs without design in the reasonable performance of the employee's duties." At page 171. It is apparent from the facts in *Geipe*—and specifically so noted in *Stancliff*—that the injury suffered by the claimant involved "some unusual or extraordinary condition of the employment or in the doing of the work by the employee." At page 202.

In finding McLaughlin's injury to be accidental, the court below also relied upon the 4-3 holding of the New York Court of Appeals in *Klimas v. Trans-Caribbean Airways, Inc.*, 176 N.E.2d 714. There, the director of maintenance and engineering of the employer airline was placed under heavy work pressure and great mental and emotional stress in connection with the repair of an airplane. He was told, in effect, that he would lose his job if he failed to have the airplane repaired within a given time. He worked long beyond his normal hours in his efforts to repair the aircraft and incurred an enormous repair bill, which he feverishly attempted to have reduced. He became depressed and fearful for his job. As a result of his extreme anxiety, he suffered a myocardial infarction and died. The court found that the heart attack which caused the death was accidental under the New York Workmen's Compensation law. It said: (page 716)

> "* * * We think it may not be gainsaid that undue anxiety, strain and mental stress from work are frequently more devastating than a mere physical injury, and the courts have taken cognizance of this fact in sustaining awards where no physical impact was present." (Citing cases.)

We think the lower court's reliance on *Klimas* was misplaced. Factually, the case is far different from the present case. But more importantly, we think the only proper test to be applied in determining whether, under Maryland law, McLaughlin's injury was accidental is, as it has always been, whether the injury resulted from some

*unusual* strain or exertion of the employee or some *unusual* condition of the employment. Considering the evidence in light of this test, we do not think appellee's injury was "accidental" within the meaning of the Act. There was no extraordinary or unusual condition or happening in the operations of the employer; everything that was done or happened while appellee was working was naturally and ordinarily incident to the operation of the employer as it was customarily carried on. *See Stancliff v. H. B. Davis Co., supra,* at page 203. That a shortage of concrete should develop on a construction job is not unusual or extraordinary, nor was McLaughlin, by reason of such shortage, placed in contact with any unusual condition or eventuality beyond that ordinarily to be expected in his employment. *See Heil v. Linck,* 170 Md. 640. While it is readily understandable that for reasons heretofore set forth McLaughlin would become concerned over the concrete shortage, and press his supervisors for a solution to the problem, he was but engaging in the usual performance of his duties as a labor foreman. Under the circumstances, we do not think that the ensuing verbal encounter between McGinnis and McLaughlin, no matter how "heated" it may have been, could constitute, by itself, an unusual strain or exertion on McLaughlin's part, or such an extraordinary happening in the work not usually and naturally incident thereto, as would bring McLaughlin's resulting unexpected paralysis within the ambit of the term "accidental personal injury," as defined by the Maryland cases. That McGinnis's tongue lashing of McLaughlin may have included some profanity and a sudden and unexpected bodily movement on McGinnis's part, cannot alter the conclusion that what is involved in this case is but an unexpected result not produced by an accidental cause; as such, it is not compensable.

We therefore conclude that the lower court was in error in reversing the decision of the Workmen's Compensation Commission.

*Judgment reversed; appellant*
*to pay costs.*