CHARLES WILLIAM HOLBROOK *v.* GM ASSEMBLY
DIVISION, GENERAL MOTORS CORPORATION

[No. 607, September Term, 1971.]

*Decided June 2, 1972.*

The cause was argued before MURPHY, C. J., and ANDERSON and ORTH, JJ.

*Marvin B. Steinberg,* with whom were *Gomborov, Steinberg, Schlachman & Harris* on the brief, for appellant.

*Daniel E. Klein, Jr.,* with whom were *Klein, Harlan & Jett* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

On 3 April 1972 by an unreported per curiam opinion we remanded this case without affirming, reversing, or modifying the judgment, Maryland Rule 1071, for compliance with Rules 18 § c and 564 § b 2 requiring that within fifteen days after entry of an appealable final judgment in a contested action at law tried upon the merits without a jury, the lower court shall make a memorandum of the grounds for decision by dictating to the court stenographer or reporter, or by preparing and filing in the action, a brief statement of the grounds for its decision and the basis for determining damages, if any. The lower court is now in compliance and we entertain the appeal on the merits.

We are presented with the question whether the lower court erred in deciding that Charles William Holbrook (appellant), employee of G. M. Assembly Division— General Motors Corporation (appellee), self insured employer, had not sustained an accidental personal injury arising out of and in the course of employment. The action was tried by the Superior Court of Baltimore on appeal by appellee from an order of the Workmen's Compensation Commission of 25 June 1970 predicated upon a finding that appellant had sustained such an injury. The case was submitted to the lower court on the record from the Commission and a judgment absolute was entered in favor of appellee for costs.[1]

---

1. At the hearing in the Superior Court the judge suggested to

Appellant testified before the Commission that on 29 April 1970 he was working for appellee. His job was installing shelf pads. He had some difficulty "involving the use of a stool and knee pads." He told what happened:

> "Well, I was use to using a stool and they give me a knee pad and in using the knee pads constantly for two or three days and after banging my knees two or three days, knee pads kept bothering my leg and constantly just got so bad, I had to go to the plant hospital."

He had been using a stool rather than knee pads in the performance of his work for about two and a half years— "ever since I've been on the job. * * * They took my stool. * * * Well, I had an over work grievance on my job and they took the stool away. Told me wasn't doing the job too quick and give me knee pads and told me to use knee pads." He developed trouble with his knees while using the knee pads for two and a half days. He lost two and a half days from work and then went back on the job without the knee pads. He was asked by the Commissioner "what was wrong with the knee pads, why weren't you able to use them?" and replied, "The more I use them the worse my knee hurt." He thought he received medical attention the first day he was required to wear knee pads. "The more I used it, and had knee pads on both knees, had me kneel down on the inside of the job and use one knee and did that. The more I use the knee and the worse it got, started hurting. I finally went to the dispensary and got pain pills. After two or three days the pain pills weren't even helping, so I went to the plant dispensary, told me, if I couldn't do my job, I just

counsel for both parties that the matter should be remanded to the Commission "to take further testimony so that the court might better understand the nature of the claimant's job, the circumstances under which claimant performed his job, indeed, what the usual conditions of employment were. Counsel prevailed upon the court to make a decision based upon the evidence which the court had before it which was the same evidence that was before the Commission." The quotation is from the memorandum opinion of the lower court.

couldn't work on one knee, I told them I had been willing to do another operation to get off my knee until my knee got better, and said, if I couldn't do my job I would have to go home. So they sent me home to see my own doctor." He had no difficulty with his knee before he started using knee pads. "I have never had any trouble with my knee. My knee constantly hurts now while I'm performing the job. After a couple of hours on the job it hurts and get pains in my knees which I never had before. I still have blackness and redness around my knees. Still puffed up a little bit."

There is in the record as filed on 18 June 1970 a letter from Humberto V. Certeza, M.D., to appellee's attorney. The letter is dated 17 June 1970 and reads:

"On April 16, 1970, Mr. Charles W. Holbrook reported to the General Motors Assembly Plant hospital and stated: 'Had injury to left ankle in March, 1969, and today ankle is aching.' States stool was removed and foreman advised he did not need to use it. Was given knee pads to wear on both knees. 'Middle of both knees are aching from knee pads.' 'I want stool back again.' The nurse on duty recorded discomfort inferior aspect of left lateral malleolus and posterior aspect of the left ankle. Small indentation of tibial crest upper third where edge of knee pad bites into leg when knees are bent of the left and right leg. Supportive dressing was applied to ankle. Bufferin tablets were given, PRN.

The next day patient returned to the hospital and stated he could not do his regular work due to pain of the posterior ankle. This not being an accident or injury due to an accident, patient was placed on sick leave. On April 27, 1970, patient returned again complaining of discomfort of the right leg, tibial crest, mid-third from knee pads. Bufferin tablets were given. On April 28, 1970, on his return, ice cap was applied to the

shin and Bufferin tablets were given. On April 29, 1970, patient states right knee too sore to continue kneeling on it and unable to do regular work. Placed on sick leave.

This patient was seen again on May 6, 1970, requesting medication for discomfort of the right knee. Darvon Compound was given. On June 5, 1970 he was examined and showed no limitation of movement, of the right and left knee. Small amount of discoloration of the lateral malleolus of the left ankle, but no tenderness or swelling. This employee was placed on sick leave as a result of his complaints. These complaints not resulting from any accident or injury but as a result of personal discomfort."

There is in the record the Employee's Claim, filed 5 May 1970, which gives the date of the accident as 29 April 1970 and describes how the accident occurred in these words: "Working on a knee pad, injured right knee." The Employer's First Report of Injury, dated 3 June 1970, reads under the item "Cause and Nature of injury": "Left ankle, discomfort inferior aspect of left lateral malleolus and posterior aspect left and right legs, small indentation over tibial crest, upper third where edge of knee pad bites into leg when knees are bent." This injury was alleged to have occurred 16 April 1970. A report dated 29 May 1970, which as best we can decipher it, was completed by his physician, Dr. Sadarana, gives as the medical description of the injury: "Skin overlying rt. knee is red & tender obviously from friction from knee pad. No swelling or blister." Treatment given was thus stated: "Advised to keep pad off knee." That part of the statement of claim for sickness and accident benefits completed by Dr. Sadarana reads, insofar as it is legible, under the heading "Objective findings" concerning the right knee "obviously from friction or irritation from knee cap." A dispensary card submitted by appellee includes under date of 14 April 1970 a notation

under diagnosis: "Small indentation over tibial crest u/3 where edge of knee pad bites into leg when knees are bent." The employee's statement on this card reads as follows:

"Had injury to left ankle of March 1969 and today ankle is aching. States stool was removed and advised by foreman he didn't need to use it & and was given knee pads to wear on both knees and middle of both legs are aching from knee pads. I want stool back again."

The entry under date of 27 April is "complaining of discomfort right leg, tibial crest, mid 3rd from knee pads," and under date of 29 April it reads "States rt. knee too sore to continue kneeling on it & unable to do reg. work."

The Commission found that "the claimant sustained an accidental injury arising out of and in the course of his employment on 29 April 1970."

It is patent that the injury here arose out of and in the course of appellant's employment. The only question is whether it was an accidental injury.[2] We fully discussed "accidental injury" in *Whiting-Turner v. McLaughlin*, 11 Md. App. 360, cert. den., 262 Md. 748. We found it established that the usual and ordinary implications of the word "accident" as associated with ideas of trauma, involving to a degree at least elements of force, violence and surprise had been expanded in Workmen's Compensation law to include any mischance resulting in physical injury to the bodily tissues produced by some unusual and extraordinary condition or happening in the employment not usually and naturally incident thereto. That to be accidental the injury must result from some unusual strain or exertion of the employee or some unusual con-

---

2. Under Code, Art. 101, § 15 an employer is required to pay Workmen's Compensation benefits for "an accidental personal injury sustained by the employee arising out of and in the course of his employment * * *." That the injury arises out of and in the course of the workman's employment does not alone make it compensable; it must, in addition, be an accidental one. *Whiting-Turner v. McLaughlin*, 11 Md. App. 360, note 1 at 361.

dition in the employment is not to say that nothing more is required than that the harm be unexpected. Although the Maryland rule has been severely criticized, see 18 Md. L. R. 131, it is clear that in this jurisdiction it is required that there be an accident and not merely a result. Id., 362-366.

The lower court applied the correct rule with respect to accidental injury but it found that the evidence before the Commission was insufficient to show the injury had been accidental. It said:

> "There was nothing in the record before the Court or the Commission to indicate what kind of shelves the claimant was installing, where or in what the shelves were being installed, the work space available for their installation, the weight, length, etc. about the shelves. There was no evidence to suggest why a stool was necessary to perform the installation; nor was there any difference shown in the process of installing the shelves because of the use of the knee pads as opposed to the use of the stool.
>
> The claimant was of the persuasion that the change from stool to knee pads was sufficient in and of itself to show an unusual condition giving rise to accidental injury. The Court was not so convinced and felt that the fact of a knee injury was not by itself sufficient."

We have no difficulty in concluding that the evidence was sufficient in law to establish that the injury sustained was caused by the knee pads. Appellant sought medical treatment, if not the same day, certainly shortly after he was first required to wear the pads. The medical reports were to the effect that the pads bit into the leg when the knees were bent and that the skin on the knee was irritated "obviously from friction from knee pad."

The question is, therefore, whether the evidence was sufficient to establish that the injury caused by the knee pads was accidental. We first observe that an accidental

injury may be one caused by conditions extending over a substantial period of time; it need not be suddenly incurred. "[U]nder the Maryland law an accidental injury is one happening by chance or taking place unexpectedly or unintentionally; that the injury need not be created by wound or external violence; and that the conditions causing an injury do not have to be confined to a particular and single time and place, but may extend over a considerable period." *Union Mining Co. v. Blank,* 181 Md. 62, 78. See *Foble v. Knefely,* 176 Md. 474; *Victory Sparkler Co. v. Francks,* 147 Md. 368. So a determination that appellant's injury was accidental would not be precluded whether it be deemed to have occurred when he first wore the pads and thereafter worsened or whether it be found to have been caused by the pads over a period of time. It is not disputed that appellant was required to wear the knee pads. The inquiry turns therefore to whether the requirement to wear the pads was an unusual condition of employment within the contemplation of the Workmen's Compensation Act. Implicit in the finding of the Commission was that it was. In all court proceedings under or pursuant to the Workmen's Compensation Act "the decision of the Commission shall be *prima facie* correct and the burden of proof shall be upon the party attacking the same." Code, Art. 101, § 56 (c). See *Yelton v. Higgins,* 13 Md. App. 599, 603-604; *Symons v. R. D. Grier & Sons,* 10 Md. App. 498, 500-501. We feel that the substitution by the employer of the knee pads for the stool used for two and one-half years by appellant, considered in the light of what then resulted, was sufficient in law to show a reasonable probability that the disability came from an accidental injury which arose out of and in the course of the employment. Compare *Montgomery County v. Athey,* 227 Md. 312, in which the finding of such a probability before the Commission could have amounted to no more than a speculative guess. There being legally sufficient evidence to support the Commission's decision, it was *prima facie* correct. The case being submitted to the lower court on the evidence before the

Commission with no additional evidence adduced, we find that the appellee did not meet its burden of proof or persuasion in attacking the decision. We hold that the lower court was clearly erroneous in its judgment on the evidence.[3]

> *Judgment reversed; appellee*
> *to pay costs.*

---

3. What distinguishes the instant case from cases cited by appellee is the introduction of the knee pads into the work performed by appellant and the causal connection between the pads and the injury. In *Rieger v. Washington Suburban Sanitary Commission*, 211 Md. 214; *Kelly-Springfield Tire Co. v. Daniels*, 199 Md. 156; and *Jackson v. Ferree*, 173 Md. 400, recovery was not allowed even though the position of the workman probably contributed to the injury because the position was a normal incident of the work. But unlike the case here there was no showing that the injury had another causation. We think that *Eastern Shore Co. v. Young*, 218 Md. 338; *Mize v. Beauchamp*, 245 Md. 583; and *Voss v. City of Baltimore*, 246 Md. 345, are distinguishable in like manner.