CITY OF SALISBURY ET AL. *v.* JOSEPH L. McCOY

[No. 503, September Term, 1980.]

*Decided January 8, 1981.*

The cause was argued before MORTON, MOYLAN and COUCH, JJ.

*Edgar A. Baker, Jr.,* with whom was *Sheldon B. Seidel* on the brief, for appellants.

*H. Michael Hickson* for appellee.

COUCH, J., delivered the opinion of the Court.

Joseph L. McCoy, the appellee, was injured while working for the City of Salisbury, appellant, and he subsequently filed a claim for benefits under the Maryland Workmen's Compensation Act.[1] After a hearing the Workmen's Compensation Commission found that the appellee did not sustain an accidental injury arising out of and in the course of his employment. An appeal was taken and the matter was

---

1. Maryland Code (1957, 1979 Repl. Vol., 1980 Cum. Supp.), Art. 101.

tried before a jury in the Circuit Court for Wicomico County. A verdict favorable to the appellee was returned and thereafter the employer and insurer filed the instant appeal. As we disagree with appellants' position, we shall affirm.

The facts in this case are largely uncontradicted. The City of Salisbury employed the appellee as a dump truck driver, generally hauling construction material to job sites or trash to a treatment plant. In late October or early November of 1977 a new dump body was installed on the City truck which McCoy had been assigned to drive. Operation of the truck's dumping mechanism required that the driver open the truck's tailgate by pushing down on a lever located outside the driver's compartment. To secure the tailgate after dumping, this lever was pulled back up.

A dump truck driver could usually operate a tailgate lever with one hand, by reaching out of the driver's window. After the new dump body was installed, the appellee inspected his truck and discovered that the new lever was under abnormal tension and thus was difficult to operate. Pulling up on the lever was particularly hard, according to the appellee who had to leave his seat and use two hands to raise the new lever.

Before driving the renovated truck, McCoy advised his employer's maintenance supervisor of the lever's tightness. The supervisor and three other mechanics examined the mechanism, operated it using two hands, and assured the appellee that the lever would eventually loosen. The appellee then drove the truck several times without apparent incident.

On November 29, 1977, McCoy used the truck to dump a load of waste material for his employer. On that occasion the tailgate opened without much difficulty. To close the tailgate, however, the appellee had to get out of the truck and stand on the truck's running board. McCoy testified that:

"With S-5 [the dump truck] I had to do it like that. And I bent over like this, and gave a crank to pull the tailgate lever up, and only this time instead of

going up and flipping back into place, it kicked back down on me. In other words, she pulled me down. I felt a terrific pain in my back that shot down my left leg. I gave a yell, and I cussed, and I told Walter Banks [McCoy's co-worker]."

In the afternoon of November 29, 1977, the appellee informed the maintenance supervisor of the problem with the tailgate lever and of the injury the appellee sustained. The supervisor subsequently adjusted the lever, but it continued to be tight.

The appellee sought medical attention for his injury. Initially his physician prescribed analgesics and bed rest. On March 3, 1978, however, the appellee underwent surgery which included a hemilaminectomy and a bilateral-lateral fusion.

On January 24, 1980, a jury of the Circuit Court for Wicomico County found that McCoy sustained an accidental injury arising out of and in the course of employment on November 29, 1977, thus allowing his claim for workmen's compensation.

## I. Denial of Directed Verdict

The City of Salisbury and the United States Fidelity & Guaranty Company, appellants, contend that McCoy's injury occurred while he was performing his regular work, without the existence of any unusual or extraordinary condition. Therefore, the employer and insurer argue, appellee's injury does not constitute an "accidental injury" within the meaning of the Workmen's Compensation Act, and the circuit court erred in not granting the appellants' motion for a directed verdict. We do not agree.

When the circuit court ruled on the appellants' motion for a directed verdict, the court had to consider the evidence and its inferences in the light most favorable to the appellee. *Montgomery Ward and Company v. McFarland*, 21 Md. App. 501, 319 A.2d 824 (1974). Before submitting the case to the jury, the court had to find that appellee's evidence was

legally relevant and competent, and a rational conclusion could be drawn which would be favorable to the appellee. *Bullis School v. Justus,* 37 Md. App. 423, 377 A.2d 876 (1977). The trial judge gave the appellee the "benefit of the evidence," and ruled that the evidence and its fairly deducible inferences tended to support the appellee's case. Specifically, the judge found in McCoy's uncontradicted testimony, adequate justification to deny appellants' motion for directed verdict and to allow the jury to weigh the evidence.

## II. Accidental Injury

To conclude that McCoy's injury was compensable under the Workmen's Compensation Act, Md. Code Art. 101, § 15, the jury would have to find that his injury was "accidental." *Holbrook v. GM Assembly Division,* 15 Md. App. 425, 430, 291 A.2d 171 (1972). The jury concluded that the appellee's injury was accidental, but the appellants contend that this conclusion was premised upon evidence which "did not rise above speculation, hypothesis and conjecture."

We do not quarrel with the requirement that an employee's injury must be accidental in order to be compensable. We disagree with the appellants, however, in their characterization of the appellee's evidence, for we are persuaded that the jury could infer that McCoy suffered an accidental injury.

Under Maryland law a compensable, accidental injury must result from an unusual exertion or strain or some unusual condition in the employment. *Commercial Transfer v. Quasny,* 245 Md. 572, 227 A.2d 20 (1967). Clarifying the use of the phrase in workmen's compensation cases, the Court of Appeals said in *State Roads Commission v. Reynolds,* 164 Md. 539, 546, 165 A. 475 (1933):

> " 'Accidental,' so used, may mean any fortuitous, casual, and unexpected happening which causes personal disability or death which results from some unknown cause, *or from the unexpected and*

*unusual operation of a known cause;* and an accident may be said to arise 'out of an employment' when it results from conditions and circumstances reasonably incident to it." [Emphasis added.]

Applying this definition in various circumstances, the Court of Appeals has determined that an accidental injury did not occur when a worker died from chronic exposure to varnish fumes, *Stancliff v. H. B. Davis Co.,* 208 Md. 191, 117 A.2d 577 (1955), and when a mechanic suffered a hernia while forcing a stuck wheel onto a truck axle, *Jackson v. Ferree,* 173 Md. 400, 196 A. 107 (1938). Citing the definition from *Reynolds, supra,* the Court of Appeals in *Jackson, supra,* noted that manual workers necessarily received jars to the body, but that consequent injuries would not be deemed "accidental injuries" in the absence of any undue strain or stress. *Jackson, supra* at 403.

The Court of Appeals has refused to find an injury to be accidental when that injury results from "a normal incident" of an employee's work. Thus, in *Rieger v. Washington Suburban Sanitary Commission,* 211 Md. 214, 216, 126 A.2d 598 (1956), a pipefitter was denied compensation for back pain sustained while he performed the same procedure that he had used for two months prior to his injury. Similarly, a stevedore could not be compensated for a hernia resulting from his lifting of a tin plate in the ordinary course of his work. *Atlantic Coast Shipping Co. v. Stasiak,* 158 Md. 349, 148 A. 452 (1930).

The *Stasiak* decision, cited by the appellants as analogous to the present case, has been distinguished from the circumstances in which a miner attempted to move a large rock in the course of his employment, but was injured by a sudden slippage. *Waddell George's Creek Coal Co. v. Chisholm,* 163 Md. 49, 161 A. 276 (1932). Interpreting the significance of this additional cause of the injury, Chief Judge Bond stated:

"The first fellow workman to reach Chisholm at the time moved the stone apparently without difficulty. But in the further testimony that there was a slip,

and the attribution of the injury to that slipping, meager as that testimony is in respect to details, there seems to this court to be sufficient to differentiate this case from that of Stasiak, and to provide the evidence of accident necessary to cause the case on the facts to be referred to the jury. The slipping, if it caused the injury, seems to constitute such an unusual happening, coming by chance or without design, and taking place unexpectedly and unintentionally in the course of the work and as a result of it, as would be the mark of an accident within the meaning of the act. *Victory Sparkler Co. v. Francks,* 147 Md. 368, 381, 128 A. 635 [(1925)]. And, as has been stated, it seems to us that, in the injured man's statements, as repeated by the witnesses, the jury might find it was meant that the slipping caused the injury. Upon that occurrence, he said, the pain struck him like a knife. It was not stated that the slipping imposed an unusual strain upon him, but some such connecting fact may be inferred if the slipping did cause the injury. And, as this court has concluded, there was sufficient testimony for a jury's finding that it did cause the injury. Prayers of the appellant for direction of a finding by the jury that there was no accident were therefore properly refused." *Id.* at 55.

The harmful influence of an unusual strain, caused by a slippage, or contributing damage caused by malfunctioning machinery, may make an employee's injury accidental. In *Foble v. Knefely,* 176 Md. 474, 6 A.2d 48 (1939), the improper adjustment of a worker's sewing machine contributed to her injury, and thus the injury was deemed accidental. Likewise the unusual strain imposed upon a repairman when he attempted to disconnect a corroded pipe permitted the rational conclusion that the employee suffered an accidental injury, in *Bethlehem Steel Co. v. Golombieski,* 231 Md. 124, 188 A.2d 923 (1963).

In the present case, a jury could reasonably infer from the testimony that the appellee worked in an "unusual condi-

tion" during November of 1977. McCoy's operation of a new dump truck mechanism that required him to use unique procedures, in contrast to normal methods, could constitute an unusual condition. Having been well-informed of McCoy's working condition, the jury decided that the condition was unusual. We do not dispute their conclusion.

Additionally, the jury could and did reasonably conclude from the testimony that the appellee received an unexpected strain from the singular reaction of the tailgate lever. In *Fisher Body Division v. Alston,* 252 Md. 51, 249 A.2d 130 (1969), a compensable, accidental injury was held to have occurred when an automobile worker twisted his back by exerting more than the usual amount of effort needed to loosen a clamp. Previously, the Court of Appeals in *Baltimore & Ohio R.R. Co. v. Zapf,* 192 Md. 403, 64 A.2d 139 (1949), affirmed a jury's award of compensation to a rolling mill worker injured by the "mischance" of having a heavy axle strike against his hand tool. The worker had to lift the axle back onto its rollers, compounding his injury.

As in *Alston* and *Zapf, supra,* the claimant in the present case had to use extraordinary effort in wielding his employer's equipment. Moreover, in the case at bar, and in each of its precedents, the employee's effort presaged a unique consequence. McCoy testified that the tailgate lever "kicked back" at him as he tried to raise it, causing his injury. The jury properly attributed the appellee's accidental injury to the lever's recalcitrance.[2]

Therefore we hold that the circuit court did not err in submitting the case to the jury, and there was more than adequate evidence to support its conclusion.

Decisions from other jurisdictions support our holding on the issue of accidental injury.

When a sawmill employee assisted a co-worker who operated a defective windlass, a resultant injury to the employee was held compensable under New Hampshire's

---

**2.** This English noun, meaning "defiance" and "difficulty in operating," has an appropriate etymology for this case, being derived from the Latin verb *recalcitrare,* to kick back.

workmen's compensation law in *West v. Cheney,* 190 A. 710 (N.H. 1937). Speaking for the Supreme Court · of New Hampshire, Justice Branch found:

> "There was evidence to sustain the conclusion that the plaintiff was injured while endeavoring to cope with a situation caused by 'a defect or insufficiency' in the condition of the defendant's machinery by a method known to and sanctioned by him. If in so doing he acted within the scope of his employment and was not shown to be guilty of contributory negligence, his· right to recover under the statute would be clear. [Citation omitted.] These two issues were properly submitted to the jury." *Id.* at 712.

The Florida Supreme Court reversed an order of Florida's Industrial Commission, and awarded benefits to a dump truck driver who suffered severe back pain after pulling out the tailgate of his employer's truck, in *Strickland v. Al Lander's Dump Trucks, Inc.,* 170 So. 2d 445 (Fla. 1964). Similarly, a New York intermediate appellate court held that a Mack truck driver deserved compensation for a broken wrist sustained while cranking a truck. *Randazzo v. Kasten, et al.,* 279 N.Y.S. 631 (App. Div. 1935). More recently, Utah's highest court granted a worker compensation for burns suffered when the worker attempted to start his employer's truck by pouring gasoline into the carburetor. The court's decision· in *Moser v. Industrial Commission of Utah,* 440 P.2d 23 (Utah 1968), reversed the commission's denial of benefits.

These cases demonstrate the rationale of the courts in finding that the harm inflicted upon employees by malfunctions of equipment, used in exceptional circumstances, constitute accidental injuries.

### III. Presumption of Correctness

The appellants also argue that the decision of the Workmen's Compensation Commission in the present case

was prima facie correct, and that the appellee did not overcome this presumption. Although a factual determination of the Commission is presumably accurate, *Symons v. R. D. Grier & Sons Co.,* 10 Md. App. 498, 271 A.2d 398 (1970), the presumption may be rebutted by new evidence presented to the circuit court, or by persuading the trier of fact to accept a different inference from the evidence. *ABC Day Care Center, Inc. v. Browne,* 17 Md. App. 470, 302 A.2d 708 (1973).

By our review of the record we find sufficient evidence from which the jury could reasonably infer that the appellee sustained an accidental injury, and could responsibly reverse the Commission's determination.

> *Judgment of the Circuit Court affirmed.*
> *Costs to be paid by appellants.*