GEORGIA A. SARGENT v. BOARD OF EDUCATION
OF BALTIMORE COUNTY ET AL.

[No. 1605, September Term, 1980.]

*Decided September 3, 1981.*

The cause was argued before MOYLAN, MELVIN and
WILNER, JJ.

*Joseph F. Lentz, Jr.,* with whom were *Richard B. Jacobs*
and *Lentz, Hooper, Jacobs & Blevins, P.A.* on the brief, for
appellant.

*R. Roger Drechsler,* with whom were *Lord, Whip,
Coughlan & Green, P.A.* on the brief, for appellees.

578

WILNER, J., delivered the opinion of the Court.

The Workmen's Compensation Commission determined that appellant, a custodial employee of the Baltimore County Board of Education, was entitled to compensation by reason of an accidental injury arising out of and in the course of her employment. The Circuit Court for Baltimore County, on appeal by the Board, reversed that determination. We think that the commission was correct and that the court was wrong.

In 1972, appellant became employed by the Board as a Custodian II. That was a classification reserved exclusively for females, whose duties were limited to "light work" such as sweeping classrooms and cleaning restrooms. Male custodians were designated as Custodian I, which carried a higher rate of pay; they were responsible for the heavier tasks of maintenance, including cleaning the school boilers. In 1976, in response to the passage of the Federal Equal Pay Act, the classification distinction between male and female custodians was eliminated and all custodians, regardless of sex, became classified as Custodian I.

The duties of a Custodian I, according to the chief custodian, included "cleaning, cleaning floors, light maintenance, and ... *boiler cleaning.*" (Emphasis added.) [1]

---

[1] The actual "job specification" for a Custodian I is not especially enlightening, in terms of the work actually done. Under one category, "Initiative and Ingenuity," it states: "Work is of a repetitive nature but requires limited judgment when effecting simple repairs or deviating from schedule due to emergency." Next, under the heading "Physical Demand," the job "[r]equires frequent intervals of considerable physical effort to lift and empty containers of trash, move furniture and unload and store supplies." The following specification, "Mental or Visual Demand" states: "Requires normal mental and visual attention to operate power equipment." As to "Responsibility for Equipment and Material," the Custodian I is "[r]equired to assist in the operations and maintenance of boiler plant and auxiliary equipment where careless practice could result in damage in excess of two hundred and fifty dollars ($250.00)." "Working Conditions" are described as "[s]omewhat disagreeable ... when exposed to garbage fumes or when required to clean shop areas where equipment and surroundings might be greasy or dirty." The remaining job specifications were described as "Responsibility for Safety of Others — Requires reasonable care while operating power equipment to prevent minor injury to others"; "Responsibility for Work of Others — Responsible for assigned work only"; and "Unavoidable Hazards — Failure to exercise due care while climbing or moving heavy items could result in serious injury."

The boilers were cleaned once every other year, with the even-numbered boilers being cleaned in the even-numbered years and the odd-numbered boilers being cleaned in the odd-numbered years. Thus, from the custodian's perspective, it was an annual event. From the record, it is apparent that this task was not a pleasant one; the inside of the boiler was dark, illuminated by one hanging light, and very sooty. The boiler was large enough to accommodate three people, with each person entering the boiler through a small opening by lying horizontally on a board which slid through the opening. When cleaning the boiler, the custodians wore masks as a precaution against hazardous breathing conditions. Once inside, the custodians would clean the soot off the interior walls of the boiler with a wire brush.

Appellant's first encounter with boiler cleaning came in 1978. She attempted to enter the boiler but fainted, thereby preventing her participation in the annual event. Immediately thereafter, she was examined by a Health Services doctor who diagnosed her reaction as a manifestation of a "mild and subclinical form of claustrophobia," or, as appellant defined it, her fear of "being confined in a small space." The doctor recommended that appellant "be delegated to other or equivalent duties . . . but if required to perform the boiler cleaning operation for a period of three to four hours, I can find no absolute contraindication to her performing this task." The record is unclear as to whether appellant's supervisors were aware of that report.

On March 16, 1979, appellant was again scheduled to clean the boiler. Under protest, she agreed to enter the boiler and complete her assignment, believing that her refusal would result in the termination of her employment. Another female custodian and appellant's supervisor entered the boiler before appellant. Upon entering the boiler, appellant screamed, "I can't breathe" and immediately blacked out, awakening several hours later in the Shock Trauma Unit of University Hospital.

As a result of this incident, appellant filed a workmen's compensation claim, requesting recompense for the time she

missed as a consequence of her experience. Except for two days, appellant was unable to work from March 17 through April 2 due to her nervous condition, for which a doctor prescribed medication. After a hearing, the Workmen's Compensation Commission awarded temporary total disability for March 17 to April 1, taking into account the intervening two days of work. The award was affirmed on rehearing, at which time appellee appealed to the Circuit Court for Baltimore County. On October 20, 1980, the Court reversed the Commission's finding, holding that appellant's injury was not accidental and therefore not compensable.

Appellant has appealed to this Court where she asks whether she "sustain[ed] an accidental injury arising out of, and in the course of her employment within the meaning of Article 101, § 15." We find that appellant did sustain such an injury and, accordingly, we reverse the holding of the Circuit Court for Baltimore County and reinstate the award granted by the Workmen's Compensation Commission.[2]

Article 101, § 15 states that "[e]very employer ... shall pay or provide ... compensation ... for the disability or death of his employee resulting from an *accidental personal injury* sustained by the employee arising out of and in the course of his employment without regard to fault as a cause of such injury. . . ." (Emphasis added.) Whether an injury sustained on the job is an "accidental" one, within the meaning of § 15 has, of course, been the subject of numerous commentaries (*see* 1B Larson's Workmen's Compensation Law § 37-60.60 (1980); 18 Md. L. Rev. 131 (1958)) and a plethora of court decisions. While the majority of jurisdictions consider an injury to be accidental if it was the unexpected result of the routine performance of the employee's duties, the Maryland Court of Appeals has chosen to adhere to a much narrower view. Under this more restrictive view, in order for an injury sustained during the course of his employment to be "accidental," and thus com-

---

**2.** Appellant did raise one other issue on appeal, namely, "[w]as it error for the trial court to allow into evidence a transcript of the re-hearing of July 31, 1979, which included a colloquy between counsel and the Commissioner." Due to our holding as stated above, we find it unnecessary to address this issue.

pensable, it must result "from some *unusual* strain, exertion or condition in the employment." (Emphasis added.) *Stancliff v. H. B. Davis Co.,* 208 Md. 191, 198, 117 A.2d 577, 581 (1955). *See Geipe, Inc. v. Collett,* 172 Md. 165, 190 A. 836 (1937); *Schemmel v. Gatch & Sons,* 164 Md. 671, 166 A. 39 (1933); *State Roads Commission v. Reynolds,* 164 Md. 539, 165 A. 475 (1933); *City of Salisbury v. McCoy,* 47 Md. App. 488, 424 A.2d 164 (1981); *Holbrook v. General Motors Assembly Division,* 15 Md. App. 425, 291 A.2d 171 (1972); *Yellow Cab Co. v. Bisasky,* 11 Md. App. 491, 275 A.2d 193 (1971); *Whiting-Turner v. McLaughlin,* 11 Md. App. 360, 274 A.2d 390 (1971). *See also Courtney v. Board of Trustees of the Maryland State Retirement System,* 285 Md. 356, 402 A.2d 885 (1979). We, of course, are not at liberty to depart from that restrictive view, which was established by the Court of Appeals.

There have been no generic definitions of what constitutes an unusual condition of employment or an unusual strain or exertion; those criteria have been defined more or less on a case-by-case basis, with the court, in each instance looking to the nature of the employee's routine duties, the normal conditions of employment, and the usual mental and physical demands placed upon the employee at work.[3]

The common denominator, if there is one, is whether, in the course of the activity leading to the accident the

---

**3.** A sampling of Maryland cases where the court found the injury to be caused by an unusual condition of employment or an unusual strain or exertion and therefore compensable as an accidental injury is as follows: *Schemmel v. Gatch & Sons, supra* (cerebral hemorrhage caused by extreme heat); *State Roads Commission v. Reynolds, supra* (employee's death caused by heat stroke, precipitated by extreme heat and the performance of heavy labor); *City of Salisbury v. McCoy, supra,* (back injury caused by malfunction of dump truck's tailgate lever); *Holbrook v. General Motors Assembly Division, supra* (knee injury caused by use of knee pads where employee had routinely used a stool); *Yellow Cab Co. v. Bisasky, supra* (cerebral vascular incident precipitated by armed robbery).

An example of those cases which held that the injury was not accidental and therefore not compensable is as follows: *Mize v. Beauchamp Associates,* 245 Md. 583, 227 A.2d 5 (1967) (during normal routine of work, employee injures back); *Stancliff v. H. B. Davis Co., supra* (while working under normal working conditions, employee dies as result of the inhalation of varnish fumes); *Whiting-Turner v. McLaughlin, supra* (employee becomes partially paralyzed after argument with another employee).

employee had departed from the normal routine of his job or whether the job conditions being performed departed from the normality to which the employee was accustomed on a daily basis. In this regard, the Court has made clear that an injury is not accidental, and thus not compensable, if "the injury results from a 'normal incident' of an employee's work." *City of Salisbury v. McCoy, supra,* 47 Md. App. at 493, 424 A.2d at 166. In other words, if an injury is sustained while the employee is performing daily, routine duties, the injury has *not* resulted from an unusual condition of employment or an unusual strain or exertion and is, therefore, not accidental. *See Rieger v. Washington Suburban Sanitary Commission,* 211 Md. 214, 126 A.2d 598 (1956); *Kelly-Springfield Co. v. Daniels,* 199 Md. 156, 85 A.2d 795 (1952). *See also* note 3, *supra.*

In the instant case, the Board maintains that appellant's injury was not accidental since the cleaning of the boilers was within the job description of a Custodian I, and thus amounted to a routine duty which she was under contract to perform. Appellant, on the other hand, contends that, despite her obligation to clean the boilers once a year, that duty was not among those chores she routinely performed. Her normal duties, except for once a year, involved sweeping classrooms and cleaning lavatories, and it is her position that her "re-classification [to Custodian I] ... had, in essence, no direct bearing on her job duties [of light cleaning and sweeping]." Therefore, she concludes, her injury, arising from the cleaning of the boilers, was not a normal incident of her work.

We agree with appellant. In judging whether a particular task is a "normal incident" of the employee's work (or, conversely, whether an injury resulted from an "unusual condition" or "unusual strain or exertion"), we must consider two factors: (1) the nature of the particular task in comparison to the other duties required of the employee, and (2) the relative frequency with which the particular task is required to be performed in comparison to the other incidents of the job. Here, both factors militate against a finding that cleaning the boilers was a "normal incident" of appel-

lant's job or that her injury arose from other than an "unusual" condition or strain.

The cleaning of the boiler was an extreme departure from appellant's routine duties and required much more physical and mental exertion than that to which she was accustomed on a daily basis. The task was considered so onerous, in fact, that the supervisors required all ten custodians to split the shift so that no one person would be inside the boiler for more than a few hours. The taxing nature of the duty is evidenced by appellant's immediate supervisor's statement that he entered the boiler with appellant and the other female custodian in order to prevent them from "panicking." Moreover, the fact that the task was performed for only two to three hours once a year clearly places it outside any characterization of routine or normal work.

The mere inclusion of the boiler cleaning duty within appellant's overall job description is not determinative of whether an injury sustained is compensable. The relevant criterion, as we have noted, is whether the duty is *routinely* performed or performed with enough frequency so as not to constitute unusual work. This Court would be setting dangerous precedent if we were to hold that any duty included within a job description is routine and usual, regardless of its nature or frequency of performance. That would be an open invitation to subversion of the Workmen's Compensation Law, which is to be liberally construed; and we decline to extend such an invitation.

The instant case is similar to the fact pattern in *State Roads Commission v. Reynolds, supra.* There, on an extremely hot day, an employee of the State Roads Commission, whose normal duties consisted of light work, namely, "trimming the roadside grass, patching small holes ... keeping dirt from the shoulders . . .," 164 Md. at 542, 165 A. at 476, was ordered to load 15-30 lb cobblestones in a truck. As a result of the heat and the heavy physical exertion, the employee died of heat stroke. In finding that his death was accidental and therefore compensable, the Court recognized that the employee, in loading the cobblestones, was engaged

in a task more laborious than that to which he was accustomed. The Court stated that,

> "[i]t may be inferred that he was qualified to do his regular work with no unusual strain or risk, but that he was not qualified to do the work of the 'extra job' under the extreme weather conditions, and as to him that was an unusual and extraordinary incident of his employment." 164 Md. at 548, 165 A. at 479.

Comparing *State Roads Commission v. Reynolds, supra,* to the case at bar, appellant's mental infirmity, claustrophobia, did not interfere with her daily work routine but was aggravated by a change in her routine — the cleaning of the boiler — which she obviously was not able to handle, despite the fact that other female custodians were capable of working inside the boiler without experiencing deleterious side effects.

To address one further issue, appellee contends that the Commission did not have the authority to award compensation to appellant since the injury arose from the mental condition of claustrophobia and was not accompanied by any physical change. *See Courtney v. Board of Trustees, supra; Geipe, Inc. v. Collett, supra.* The Commission made implicit in its decision that appellant did suffer a physical change in response to her claustrophobic reaction to entering the boiler when it found that appellant "was temporarily totally disabled from March 17, 1979 to April 1, 1979 . . . subject to a credit for days on which . . . [she] worked and received wages." On appeal, however, the circuit court did not address this issue since it held that appellant's injury was not accidental. Nonetheless, on review of the record from the Commission's hearing, we conclude that there was sufficient evidence to support appellant's contention that she suffered a physiological injury.

Appellee overlooks the fact that appellant did have a physical reaction to her claustrophobia. She blacked out for several hours, which is clearly a physiological reaction, and afterwards, was temporarily unable to maintain the

composure necessary to continue her work. She was placed on medication to calm her nerves and stabilize her blood pressure. The record is clear that the nervous shock sustained by appellant by her attempt to enter the confines of the boiler caused her blackout, "a physiological injury . . . sufficient to qualify as an accidental personal injury under § 15." *Geipe, Inc. v. Collett, supra,* 172 Md. at 171, 190 A. at 840.[4]

> *Judgment of the Circuit Court for Baltimore County reversed; costs to be paid by Board of Education of Baltimore County.*

---

4. As appellant made no complaint in this appeal with respect to the amount of the award or the number of days of disability for which compensation was awarded, we have no occasion to consider that issue. *See,* however, Md. Code, Art. 101, § 48.