533 A.2d 1332

**LANDIS OFFICE CENTER et al.**

v.

**John K. BAREFIELD.**

No. 369, Sept. Term, 1987.

Court of Special Appeals of Maryland.

Dec. 4, 1987.

Certiorari Denied March 28, 1988.

316

R. Roger Drechsler, Baltimore, for appellants.

Ronald J. Levasseur, Cumberland (George B. Levasseur, Jr., Towson, on brief), for appellee.

Argued before MOYLAN, GARRITY and WENNER, JJ.

WENNER, Judge.

Upon this appeal, appellants, Landis Office Center and its insurer, International Insurance Co., ask us to reverse a judgment of the Circuit Court for Allegany County (Leasure, J.). That court found that appellee had suffered a compensable accidental injury during the course of his employment. Specifically, appellants claim that the evidence was insufficient to generate a jury issue, and therefore their motions for judgment and judgment notwithstanding the verdict should have been granted. Appellants also contend that the trial court gave an erroneous instruc-

tion on the burden of proof. We shall hold that the court's rulings were proper and shall affirm the judgment.

John K. Barefield, appellee, sought Workmen's Compensation benefits from Landis Office Center, his employer, and International Insurance Company, its insurer, alleging that on July 11, 1985 he suffered an accidental injury arising out of and in the course of his employment. Following a hearing in Cumberland, Maryland, the Workmen's Compensation Commission found in favor of the claimant, and the employer and insurer appealed to the Circuit Court for Allegany County. Following a one-day trial, a jury affirmed the findings of the Commission. The trial court denied appellants' motion for judgment at the close of the evidence, and also denied their motion for Judgment N.O.V. and/or new trial.

## I.

The evidence presented at trial showed that on July 11, 1985 Barefield, who was employed by appellant Landis as a typewriter and copier salesman,[1] was delivering seven typewriters to Martinsburg City Hospital. Hospital personnel provided him with an "old four wheel buggy." Appellee did not believe the buggy had been used for years because the wheels "wouldn't hardly roll ...," and, "you couldn't roll it straight...." As appellee delivered each new typewriter to its destination he took away the old typewriter and loaded it on the buggy. Each typewriter weighed 75–80 pounds. Appellee said that he was asked to take these old typewriters to the hospital warehouse as a "courtesy," and he did so as he had done it in the past. Appellee testified that it was very hot that day, approximately 85 degrees. In order to enter the warehouse he had to push the buggy up a long (150–200 feet) and steep (30–35 degree angle) ramp.

---

1. Our understanding of the testimony, as it related to the arguments of the parties, was derived from appellee's brief as appellant failed to include page numbers and references to his record extract.

As appellee was pushing the buggy up the ramp he felt his chest "exploding." His condition was later diagnosed as myocardial infarction.

Appellee testified that he had been employed by Landis for a year and a half. During that time he had delivered 5 to 7 typewriters in one delivery on about 4 or 5 occasions. He characterized these occasions as "rare", and not part of his normal duties.

Appellee also testified that on Sunday, July 7, 1985, while walking up to an area called High Rock, he experienced nausea which he attributed to the chili and french fries he had eaten earlier. He said that on that occasion he had no chest pains or pain in his arms. After he got home he took two Rolaids and felt fine. Appellee said at trial that he worked Monday, Tuesday and Wednesday without any problems. At the hearing before the Commission appellee said that he experienced "ulcer type" pain on those days. Appellee did not have any heart problems or other serious medical problems before Thursday, July 11, 1985, except for an ulcer.

The hospital records conflict somewhat with appellee's testimony. A history given to Dr. Bosley of the Potomac Valley Hospital, dated July 11, 1985, stated that appellee had chest pains on Sunday, July 7, 1985 and that since then he had chest pain, going into the neck and left arm, several times daily upon exertion.

■ Maryland's Worker's Compensation Act requires that employers subject to the Act pay compensation to employees for disability or death "resulting from an accidental injury sustained by the employee arising out of and in the course of his employment." Md.Ann.Code Art. 101 § 15 (1985 Repl.Vol.). In order for an injury sustained during the course of employment to be "accidental," it must result from some unusual strain, exertion, or condition in the employment. *Sargent v. Board of Ed of Baltimore Co.*, 49 Md.App. 577, 433 A.2d 1209 (1981).

In *Sargent,* a custodial employee was allowed compensation for injuries resulting from her participation in the annual cleaning of a boiler. We held that this was an accidental injury because it was a departure from the employee's routine duties and required much more physical and mental exertion than that to which she was accustomed on a daily basis. There, we explained at 582, 433 A.2d 1209:

> In judging whether a particular task is a normal incident of the employee's work we must consider two factors: (1) The nature of the particular task in comparison to the other duties required of the employee, and (2) the relative frequency with which the particular task is required to be performed in comparison to the other incidents of the job.

As we have noted, appellee testified that he had delivered seven typewriters in one delivery only four or five times since he began working for Landis. And, as in *Sargent,* this activity required much more mental and physical exertion than appellee was accustomed to on a daily basis. Appellee said that he removed the old typewriters to the warehouse as a courtesy to the customer. There was no evidence presented as to the number of times he had removed old typewriters in the past, or the method he normally used to transport the typewriters. Moreover, that appellee may have been required to deliver these typewriters as part of his job description has no bearing on the success of his claim. *Sargent* at 583, 433 A.2d 1209.

Maryland courts have held that the word "accident" has an expanded meaning in Worker's Compensation law. *Schemmel v. T.B. Gatch & Sons Contracting and Building Co.,* 164 Md. 671, 680, 166 A. 39 (1933). In *Schemmel,* the Court of Appeals noted that "accident" has been interpreted to include such conditions as the rupture of an aneurism, pulmonary and cerebral hemorrhages, hernia, infection, and heart dilation. Moreover, the Court stated that this was true even where the injury was due in part to pre-existing disease or physical abnormality in the claimant. *Schemmel* at 680, 166 A. 39. Therefore, the claimant in *Schemmel* was compensated for a cerebral hemorrhage,

which occurred while he was working in a quarry on an extremely hot day, after he had been subjected to gas released by dynamite explosions.

In *Commercial Transfer Company v. Quasny*, 245 Md. 572, 227 A.2d 20 (1967), the claimant was employed as a truck driver. As part of his normal duties he was required to move 55 gallon drums weighing 500–600 pounds each to the front of his truck. In order to move these drums, he had to tilt the drum on its rim or edge, and while balancing it on the rim, roll it to the desired position, where it would have to be righted. Claimant suffered a heart attack when a drum he was handling tilted back on him and had to be righted by pushing the weight away from him. The Court held that this was an event outside his usual scope of employment and recovery for the claimant's death was allowed.

And, in *State Roads Commission v. Reynolds*, 164 Md. 539, 165 A. 475 (1933), heat stroke suffered by the claimant was held to be accidental.

After consideration of the relevant case law, and viewing the evidence in the light most favorable to the appellee, as we must, *Kemp v. Armstrong*, 40 Md.App. 542, 392 A.2d 1161 (1978), *cert. denied*, 284 Md. 741 (1979), *Rowe v. Baltimore Colts*, 53 Md.App. 526, 454 A.2d 872 *cert. denied*, 296 Md. 61 (1983), we hold that the trial court did not err in refusing to grant appellants' motions for directed verdict, and judgment notwithstanding the verdict.

■ We note also that the decision of the Worker's Compensation Commission is prima facie correct, *Turner v. State, Public Defender*, 61 Md.App. 393, 486 A.2d 804 (1985), although the presumption may be rebutted by new evidence presented to the circuit court, or by persuading the trier of fact to accept a different inference from the evidence. *City of Salisbury v. McCoy*, 47 Md.App. 488, 424 A.2d 164 (1981). We hold that the jury in the present case had sufficient evidence from which to affirm the decision of the commission; it obviously was not persuaded to draw a different conclusion from the evidence.

## II.

■ Appellants also contend that the trial court should have sustained their objection to its instruction on the burden of proof. We do not agree. A review of the record reveals that appellants failed to preserve their objection for our review.

Apparently, the trial judge and counsel discussed proposed jury instructions in chambers. Those discussions were not recorded. After the judge had instructed the jury the following occurred:

[The Court]: Gentlemen, it's my understanding from discussions in chambers it's been agreed in accordance with the Rule that each party or counsel may make such exceptions as they care to the Court's Instructions after the Jury has retired to deliberate. That being the case, I would simply inquire, is there any additional exception or addition that either counsel wishes to make to the instructions offered by the Court that you feel I have overlooked in accordance with what I had indicated I would give in chambers?

MR. LAVASSEUR: I have none, Your Honor.

BY THE COURT: Mr. Drechsler, is there any matter you want to bring to my attention?

MR. DRECHSLER: Other than what we discussed in chambers, Your Honor, no.

BY THE COURT: All right. That'll be fine. All right. The matter is ready for argument. Mr. Drechsler.

(Closing argument by Mr. Drechsler)

(Closing argument by Mr. Lavasseur)

(Rebuttal argument by Mr. Drechsler)

BY THE COURT: All right, counsel. Thank you very much.

All right, Mr. Clerk, you can swear the Bailiff please.

(Bailiff sworn)

(Jury retires to deliberate 4:20 P.M.)

(Following exceptions dictated out of the presence of the Jury:). . . .

We point out that Rule 2–520(e) states that a party must object "on the record promptly *after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection.*" (Emphasis supplied.) *Dixon v. Haft,* 262 Md. 611, 619, 278 A.2d 566 (1971). To be sure, Rule 2–520(e) also provides that "[U]pon request of any party, the court shall receive objections out of the hearing of the jury." But that does not mean after the jury has retired to begin its deliberations because the purpose of the rule is to give the trial judge an opportunity to amend or supplement his charge if he deems amendment necessary. *Carter v. Correa,* 28 Md.App. 397, 346 A.2d 481 (1975), *cert. denied,* 276 Md. 739 (1976). We suggest that judges neither sanction nor encourage any method for taking exception that does not comport fully with the Rule. To do otherwise will "trap" on appeal counsel who comply with such "shorthand methods" of dealing with jury instructions.

We add, however, that had appellant's "objection" to the court's burden of proof instruction been preserved, we would have rejected it and affirmed the trial court.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.